(December 18, 1908.)

VALLEY LUMBER COMPANY, a Corporation, Appellant, v. D. J. McGILVERY and JOHN W. GIVENS, Respondents.

[101 Pac. 94.]

VERDICT OF JURY—SUFFICIENCY OF EVIDENCE—POWER OF OFFICERS OF CORPORATION TO CONTRACT—PAYMENT FOR GOODS SOLD—RELEVANCY OF MATTERS PLEAD—MOTION TO STRIKE.

1. Under the provisions of sec. 4824, Rev. Stat., as amended by Laws of 1907, p. 483, the verdict of a jury will not be set aside where there is substantial evidence to support such verdict.

2. *Held*, evidence in this case examined and held to support the verdict.

3. The vice-president of a corporation, acting as president and general manager of such corporation, has authority to sell the stock in trade of such corporation in the ordinary course of business of such corporation, and to receive and to accept in payment therefor cash, or accounts against any other person.

4. Where a corporation, through its vice-president, acting as president and general manager, submits a bid for furnishing the manufactured articles of such corporation, and a contract is awarded to such bidder in excess of a bid submitted by another bidder, with the understanding and agreement made between the purchaser and the vice-president of such corporation, that such bid will be accepted, on condition that the corporation accept as part payment therefor an account held by the purchaser against the president of said corporation, and such contract is fulfilled by furnishing the goods so sold and partial payment is received therefor, such corporation cannot question the authority of such vice-president to make such contract, in a suit to recover the balance due after such partial payment has been made.

5. Where there is no limitation upon the power of a vice-president of a corporation, acting as president and general manager, in the by-laws or articles of incorporation of said company, the court will presume that such officer has authority to dispose of the articles manufactured by said corporation in the ordinary course of trade, and accept in payment therefor cash or an account against an officer of said corporation held by the purchaser.

6. The power of the vice-president and general manager to sell the stock in trade of a corporation implies the power to accept payment therefor, and the power to sell and accept payment implies the power to determine the nature and character of such payment.

7. Where the vice-president, acting as president and general manager of a business corporation, makes sales of the stock in trade of such corporation, in the ordinary course of business, such corporation will not be permitted to escape a liability upon the contract made by such officer making such a sale, upon the ground that the same was made without the knowledge or concurrence of said corporation.

8. Where the vice-president, acting as president and general manager of a corporation, deems it to the advantage of such corporation, in order to sell its manufactured goods, that an account due from the president to the purchaser of such goods shall be accepted as part payment for the purchase price of said goods, such officer will be presumed to have authority to make the same.

9. An affirmative defense is not insufficient because it does not allege an agreement in writing to pay the debt of another, where the facts plead as a defense are not plead for the purpose of showing an agreement to answer for the debt or default of another.

10. The subject matter of a plea is not sham, irrelevant or redundant because it states the facts more in detail than required under the statute to constitute a cause of action or defense.

11. Where some parts of the matter attempted to be stricken out from a pleading upon the ground that the same is sham, redundant and irrelevant, are intermingled with facts which are relevant and proper, it is not error to overrule said motion, as it is necessary to separate, in the motion, the particular parts claimed to be sham, irrelevant and redundant from those which are relevant and proper.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Action to recover a debt. Judgment for defendants. *Affirmed.*

C. H. Lingenfelter, for Appellant.

The lower court erred in not sustaining the plaintiff's demurrer to the defendant's affirmative defenses, for the reason that the defendants have set up a special defense in avoidance, alleging a purported agreement by which the agent for the plaintiff bound the plaintiff to answer for the debt of another, and that there is no allegation therein taking said agreement out of the provisions, subd. 2 of sec. 6009, Rev. Codes. (*Allen v. Richard,* 83 Mo. 60; *Billingslea v. Ward,* 33 Md. 48; *Livingston v. Smith,* 14 How. Pr. (N. Y.) 490; *Gulley v. Macy,* 84 N. C. 434; *Bernhardt v. Walls,* 29 Mo. App. 209; *Traver v. Purdy,* 30 Abb. N. C. (N. Y.) 443; *Coquillard v. Suydam,* 8 Blackf. (Ind.) 24.)

"The president's power as an agent must be sought in the organic law of the corporation, in a delegation of authority from it, directly or through its board of directors, formally expressed or implied from a habit or custom of doing business." (*Wait v. Nashua Armory Assn.,* 66 N. H. 581, 49 Am. St. 630, 23 Atl. 77, 14 L. R. A. 356; *Lyndon Mill Co. v. Lyndon Literary etc. Inst.,* 63 Vt. 581, 25 Am. St. 783, 22 Atl. 575; *Crawford v. Albany Ice Co.,* 36 Or. 535, 60

Pac. 14.)   The power of the president is not implied. "In general to release the debts due the corporation or otherwise give away the assets." (*Thompson v. McKee,* 5 Dak. 172, 37 N. W. 367; *State Sav. etc. Co. v. Stewart,* 65 Ill. App. 391; 10 Cyc. 908, and cases cited.)

"A corporation is not, as a general rule, any more than a natural person bound by any acts or engagements of its agents which are not within the limits of the authority conferred on them." (*Hartford Bank v. Hart,* 3 Day, 491, 3 Am. Dec. 274; *Brooklyn Gravel Road Co. v. Slaughter,* 33 Ind. 185.) "A corporation is bound only by such acts of its officers or agents as have been either expressly or by implication authorized." (*Kelsey v. Sargent,* 40 Hun, 150; *Purdy's* Beach Priv. Corp., sec. 776, and cases cited.)

"The implied power and authority of a general manager, no matter if such office may be had in conjunction with that of president, director, secretary or other officer or agent, is limited to do only those things which are incident to the usual business of the corporation, or to that branch intrusted to his management." (*Sarmiento v. Davis etc. Co.,* 105 Mich. 300, 55 Am. St. 446, 63 N. W. 205; *Boynton v. Lynn Gas Light Co.,* 124 Mass. 197; *Baird Lumber Co. v. Devlin,* 124 Ala. 245, 27 So. 425.)

"If the officers of a corporation have no power to bind the corporation, by making or authorizing a particular contract, the corporation does not ratify the contract by the mere failure of the officers to repudiate a claim arising out of it and presented against the corporation." (*Hotchin v. Kent,* 8 Mich. 526; *Lyndon Mill Co. v. Lyndon Lit. Co.,* 63 Vt. 581, 25 Am. St. 783, 22 Atl. 575.) Knowledge, by the corporation, of all the material facts and terms of the unauthorized contract, is essential to show, in attempting to hold that the corporation impliedly ratified it. (*Pneumatic Gas Co. v. Berry,* 113 U. S. 322, 5 Sup. Ct. 525, 28 L. ed. 1003; *Combs v. Scott,* 12 Allen (Mass.), 493; *Sanders v. Chartrand,* 158 Mo. 352, 59 S. W. 95; *Blen v. Bear etc. Co.,* 20 Cal. 602, 81 Am. Dec. 132.)

### On Rehearing.

The court has held that the agreement in controversy as to the Allen account, so called, was not within the statute of frauds; but, to take it out of the statute, the agreement can only be considered as a novation, and as a novation it is of no force or effect, for the reason that it was not agreed to by all the parties necessary to constitute a valid novation. (*Bonnemer v. Negrete,* 16 La. 474, 35 Am. Dec. 217; *Cornwell v. Megins,* 39 Minn. 407, 40 N. W. 610; 37 Cent. Dig. 1506, and cases cited; *Hancock v. Morgan,* 34 Ind. 524; *Reid v. Degener,* 82 Ill. 508; *Dean v. Ellis,* 108 Mich. 240, 65 N. W. 971; *Buchanan v. Paddleford,* 43 Vt. 64.)

"A private corporation has no power to lend its credit to another or to pledge its property to secure the debt of another in a matter in which it has no interest or which is not for its benefit. Such acts are *ultra vires* and incapable of ratification." (*Wheeler v. Home Sav. Bank,* 188 Ill. 34, 80 Am. St. 161, 58 N. E. 598.) "The assuming of a debt against a third person *is not in the usual course of business,* and some special authority so to do *must be shown.*" (*Stark Bank v. United States Pottery Co.,* 34 Vt. 144; *Hamilton v. Bates* (Cal.), 35 Pac. 304.)

James E. Babb, for Respondents.

There can be no reversal for errors committed against one who, it is apparent, is not entitled to succeed in his action or defense in any event. (3 Cyc. 385; Thompson on Charging the Jury, sec. 118; *Greenup v. Stoker,* 8 Ill. (3 Gil.) 202.)

Plaintiff, having collected, without objection, the check for $356.71, which was received by plaintiff with a statement of account which showed that the check was transmitted in full of account, is conclusively precluded from disputing the final nature of the settlement. (*Lapp v. Smith,* 183 Ill. 179, 55 N. E. 717; *Davenport v. Wheeler,* 7 Cow. 231; *Schuyler v. Ross,* 13 N. Y. Supp. 944; *Bevan v. Cullen,* 7 Pa. 281; *Creighton v. Gregory,* 142 Cal. 34, 75 Pac. 569.) "A settled or stated account is conclusive, in the absence

of fraud, mistake or error, and the burden to impeach it by clear and convincing testimony rests upon him who, on such grounds, would escape its binding force.'' (1 Cyc. 454; *Hendy v. March,* 75 Cal. 566, 17 Pac. 702; *Standard Oil Co. v. Van Etten,* 107 U. S. 325, 1 Sup. Ct. 178, 27 L. ed. 319; *Fleischner v. Kubli,* 20 Or. 328, 25 Pac. 1086.)

What is a reasonable time, when the facts are undisputed, is a question of law. (*Oil Company v. Van Etten,* 107 U. S. 325, 1 Sup. Ct. 178, 27 L. ed. 319; *Wiggins v. Burkham,* 10 Wall. 129, 19 L. ed. 885; *Talcott v. Chew,* 27 Fed. 273; *Powell v. Pacific R. Co.,* 65 Mo. 658; *Lockwood v. Thorne,* 11 N. Y. 170, 62 Am. Dec. 81; *Kleeb v. Long-Bell Lumber Co.,* 27 Wash. 648, 68 Pac. 202.)

An account, containing items of interest recoverable only in case of a written agreement, becoming a stated account by failure to object, cannot be opened because there was no agreement in writing to pay the interest. (*Sayward v. Dexter, Horton & Co.,* 72 Fed. 758, 19 C. C. A. 176; *Backus v. Minor,* 3 Cal. 231; *Marye v. Strouse,* 6 Saw. 205, 5 Fed. 483; *Brown & M. Co. v. Guise* (N. M.), 91 Pac. 716.)

The following authorities are pertinent as to the power of the president, where there has been no showing that the power is in any way limited: *Jones v. Stoddard,* 8 Ida. 210, 67 Pac. 650; *Marlatt v. Levee Steam Cotton Press Co.,* 10 La. 583, 29 Am. Dec. 468; *Kenton Ins. Co. v. Bowman,* 84 Ky. 430, 1 S. W. 717; *Topeka Primary Assn. v. Martin,* 39 Kan. 750, 18 Pac. 941; *Lancaster County v. Cheraw etc. R. Co.,* 28 S. C. 134, 5 S. E. 338; *Siebe v. Joshua Machine Works,* 86 Cal. 390, 25 Pac. 14; *Griffins v. Land Co.,* 3 Phila. (Pa.) 447; *Ceeder v. H. M. Land etc. Lumber Co.,* 86 Mich. 541, 24 Am. St. 134, 49 N. W. 575; *Bambrick v. Campbell,* 37 Mo. App. 460; *Chicago etc. R. Co. v. Coleman,* 18 Ill. 297, 68 Am. Dec. 544; *Smith v. Smith,* 62 Ill. 493; *Dougherty v. Hunter,* 54 Pa. 380; *Richmond etc. R. Co. v. Snead,* 19 Gratt. (Va.) 354, 100 Am. Dec. 670; *Voris v. Renshaw,* 49 Ill. 425; *Sparks v. Dispatch Transfer Co.,* 104 Mo. 531, 24 Am. St. 351, 15 S. W. 417, 12 L. R. A. 714.

"The president, being the legal head of the body, when an act is performed by him the presumption will be indulged that the act is legally done, and is binding upon the body; and, as a general rule, in the absence of the president, or where a vacancy occurs in the office, the vice-president may act in his stead, and perform the duties which devolve upon the president." (1 Morawetz Priv. Corp., 2d ed., p. 504; *Smith v. Smith,* 62 Ill. 493; *Mitchell v. Deeds,* 49 Ill. 417, 95 Am. Dec. 621; *Union Mutual Life Ins. Co. v. White,* 106 Ill. 67; *Irwin v. Bailey,* 8 Biss. 523, Fed. Cas. No. 7079; *Kraft v. Freeman Printing etc. Assn.,* 87 N. Y. 628; *Crowley v. Genesee Min. Co.,* 55 Cal. 273; *Merchants' Bank v. Goddin,* 76 Va. 503; *Reno Water Co. v. Leete,* 17 Nev. 203, 30 Pac. 702.)

### On Rehearing.

"The president of a business corporation, being its principal executive officer, is impliedly vested with the authority to transact its ordinary business, and the corporation is liable on a contract so made by him." (*Reedy Elevator Co. v. American Grocery Co.,* 23 Misc. Rep. 520, 51 N. Y. Supp. 874; *Dexter Savings Bank v. Friend,* 90 Fed. 703.)

"When the authority to buy or sell is given in general terms, it is clear, in the absence of any restriction to the contrary, that the agent has the power to buy for cash *or on credit,* as he may deem best, *and to sell in the same way.*" (*Ruffin v. Mebane,* 41 N. C. 507; *Brittain v. Westhall,* 135 N. C. 492, 47 S. E. 616; *Swindell v. Latham,* 145 N. C. 144, 122 Am. St. 430, 58 S. E. 1012.)

Plaintiff attempts to select those portions of, and stipulations in, the contract which it likes, enforce those, and ignore all others—seeks the right to sue for and exact the large price named in plaintiff's bid in cash, and ignore the deal made by plaintiff's officer, whereby it is agreed to pay about $220 more than another bidder offered to furnish the same goods for, in consideration that plaintiff would take and apply in payment on defendant's higher bid an assignment of defendants' account against plaintiff's president. Plaintiff now wants to pick that part of the deal that is favor-

able to it, and is willing to let the balance of it go. (*Eberts v. Selover*, 44 Mich. 519, 38 Am. Rep. 278, 7 N. W. 225; *La Compania Bilbaina De Navegacion v. Spanish-Amer. L. & P. Co.*, 146 U. S. 483, 13 Sup. Ct. 143, 36 L. ed. 1054.)

STEWART, J.—This cause was tried to a jury in the lower court and a verdict rendered for the defendants. This appeal is from the judgment and from an order overruling a motion for a new trial. The action is to recover the sum of $757.80 alleged to be due as a balance upon an account for merchandise claimed to have been sold by plaintiff to defendants in the sum of $1,114.51. The defendants denied the indebtedness and plead settlement and payment. The controversy arises out of the question whether an indebtedness due from C. F. Allen, president of the plaintiff company to the defendants, should be applied as part payment upon the account of the plaintiff against the defendants. The amount of this claim is $757.80, the amount for which this action is brought. It seems that C. F. Allen was the president of the Valley Lumber Company at the time the merchandise sued for was purchased; that at such time Allen was indebted to the defendants for merchandise claimed to have been purchased of defendants by Allen; the defendants contending that at the time the merchandise sued for was purchased, that bids were invited from different manufacturers of such goods, and that the plaintiff submitted a bid which was much higher than another bidder, and that defendants let the contract to plaintiff upon an agreement and understanding that the account defendants held against Allen should be taken by the plaintiff and credited as part payment upon the goods purchased by plaintiff from defendants. The defendants further contend that they sent a check to plaintiff for the sum of $356.71, which with the account of Allen, $757.80, paid the entire amount claimed to be due from them; that they accompanied the remittance with a statement of account showing the amount of such check, the amount of the Allen account, and that the two equaled and balanced the amount due from the defendants to plaintiff; that plaintiff accepted such check and retained

the same and made no objections to such statement or the contents thereof, and made no claim that the amount of said check and the Allen account did not balance or discharge in full the claim of plaintiff against these defendants.

Thus it will be seen that the entire controversy arises out of the Allen account; whether it should be offset against the account of plaintiff against these defendants. There was some argument on appeal whether the account of these defendants against Allen was in fact an account of Allen or whether said account was against the Lewiston Navigation Company, the owner of a steamboat, which was leased to Allen and to equip which the indebtedness was incurred for which the defendants claim Allen is liable.

The appellant makes two general assignments of error, which include many subdivisions. First, appellant contends that the evidence was insufficient to justify the verdict. Second, errors of law occurring at the trial. We will deal with these questions in the order in which counsel has presented them in his brief. First, is the evidence sufficient to support the verdict? Before taking up the evidence in detail for discussion, we are reminded by sec. 4824, Rev. Stat., as amended by Laws of 1907, p. 484, as follows: "Upon an appeal from a judgment, the court may review the verdict or decision and any intermediate order or decision, if excepted to, which involves the merits or necessarily affects the judgment, except a decision  or order from which an appeal might have been taken: *Provided,* that whenever there is substantial evidence to support a verdict the same shall not be set aside." With this provision of the statute to limit and guide the examination by this court of the evidence, we will briefly consider the evidence submitted to the jury and trial court.

We think the question of indebtedness of Allen to the defendants may be dismissed from consideration in this opinion with the statement that the evidence seems to prove such indebtedness beyond any question, and counsel for appellant, by silence at least, concedes that the evidence was sufficient to establish such indebtedness, as there is no discussion'

of this question in appellant's brief.   The argument of counsel for appellant, as to the insufficiency of the evidence, is based largely upon the contention that the evidence is insufficient to show that the plaintiff, a corporation, ever agreed to or did accept the indebtedness of Allen to the defendants as part payment for the bill of goods sold by plaintiff to the defendants, or, in other words, that the evidence is not sufficient to charge the plaintiff, a corporation, with the debt of another, to wit, its president.   It seems from the testimony that the contract for the sale of the goods, for which this action was brought, was entered into between F. X. Prugger, vice-president and manager of the plaintiff company, upon behalf of the plaintiff, and Mr. D. J. McGilvery upon behalf of the defendants.   Mr. Allen, the president of the plaintiff company, was absent from the state at the time this contract was made, and the business of the plaintiff was being attended to and looked after by Mr. Prugger, the vice-president and general manager.   Mr. Prugger testifies that he was vice-president of the plaintiff company, and had acted in the official capacity of vice-president ever since the organization of the company; that he was superintendent of the factory of the company and also a member of the board of directors, and was acting in the capacity of superintendent and vice-president at the time the work was done for the defendants.   Mr. McGilvery testified that he was in the office of the plaintiff company and asked Mr. Prugger for a bid for certain fixtures in the defendants' store; that Mr. Prugger gave him a bid and McGilvery told him he thought the bid was too high, but that the defendants were willing to pay a little more for them at home and Prugger gave them a better bid; that the defendants got a bid from the Troy Lumber Company and called on Prugger and told him his bid was too high and showed him the bid of the Troy Lumber Company, about half his bid.   He told Prugger that the defendants were willing to pay him ten per cent or twelve per cent more and left the Troy Company's bid.   The witness then said to Prugger: "You know Mr. Allen has a big account

with us and Mr. Hollister (secretary of the plaintiff company) knows that, because he has written Mr. Allen for me on this very thing. . . . . If you get down anywhere it is right we will give you the job. We want to clean this up. . . . . I told him that he knew that Mr. Allen had this large account and that we wanted this cleaned up. If we can get our fixtures and clean this up we will pay you $450 instead of $340. I believe it figures twenty-five per cent more, in order to get this cleaned up," that is Allen's account: "I told Mr. Prugger that we were willing on the consideration this was cleaned up to give them $450 instead of $340 that we could have bought if from the other party." Mr. Hollister, the secretary of the plaintiff company, testified that Mr. Prugger was the representative of the company at the time the sale was made. He was vice-president and was running the factory and made the sale to the defendants. Mr. Prugger testified that there was nothing said at the time the contract was let to the Valley Lumber Company, that the Valley Lumber Company would receive any part of the account, or any account of C. F. Allen that might be due McGilvery and Givens. He said: "I remember Mr. McGilvery handing me the Troy Lumber Company's bid; it was considerable lower than the bid my company offered. Considerable lower than the work cost us. He finally let us have the contract at a higher price than the Troy Lumber Co. agreed to make it. . . . . He awarded us the contract at a higher price than the Troy Lumber Co. had bid for it." McGilvery testified on cross-examination that Prugger accepted the proposition made to him, "and I mentioned to him why we were giving him $450 for what we could get elsewhere for $340. . . . . I mentioned Allen's account to him and told him why it was we were going to give the contract to him." This, in substance, was all of the direct testimony in relation to what was said about the Allen account at the time the contract was entered into between the plaintiff and the defendants with reference to the sale of the fixtures and supplies for which the account sued upon in this action was incurred.

There are, however, some circumstances connected with the transaction which respondents rely upon with much fervor, and contend that the same further establishes the contention that the plaintiff did accept the Allen account and agree that it should be applied upon the defendants' indebtedness to this plaintiff. It appears from the evidence that the furnishings and fixtures, covered by the contract between Prugger and McGilvery for the goods now sued for, were all furnished prior to August 5, 1906, and that the plaintiff mailed to defendants an itemized statement of their account which included the bill for the goods sold to McGilvery and Givens under the contract made between McGilvery and Prugger, and also an account for the sum of $8.30 for goods sold and delivered to McGilvery and Seeley, who were the successors of McGilvery and Givens, making the total amount $1,114.51. After this statement was received and on September 5, 1906, McGilvery and Seeley, Ltd., a corporation, which succeeded McGilvery and Givens, transmitted to plaintiff a statement as follows:

"Lewiston, Idaho, Sep. 5, 1906.

"Valley Lumber Co., Lewiston.

"We enclose herewith check in payment of your invoices as mentioned below:

| Date of Invoice. | Amount. | Deduction. | Amount of Check. |
|---|---|---|---|
| July 16 ............... | 1106.21 | | |
| Aug. 31 ............ .... | 8.30 | | |
| | 1114.51 | | |

Less C. F. Allen account.................757.80

356.71

"REMARKS: The above is per arrangement with Mr. Allen."

The check accompanying this statement paid the account in full of McGilvery and Givens and also an account of $8.30 of McGilvery and Seeley, successors, provided that the account of Allen is allowed to be offset and chargeable to plaintiff as contended for by respondents. Upon receipt

of this remittance the plaintiff company deposited the check so received with its bank and took credit for the same. Afterward, and on December 7, 1906, the plaintiff rendered another statement to McGilvery and Seeley, showing a balance due in the sum of $1.65, as follows:

"STATEMENT.

"Clarkston, Wash., Dec. 7, 1906.

McGilvery & Seeley

In Account with VALLEY LUMBER AND MANU-
FACTURING CO.

To Mdse ............................... .75
By Mdse. ret'd. ........................., 2.40

Due you ............................... 1.65

"Endorsed: Important, do not destroy."

On January 19, 1907, the plaintiff company mailed another statement to defendants as follows:

"McGilvery & Seeley,

Bought of VALLEY LUMBER COMPANY.

Aug. 29.  To 1 ironing-board 15½"x5'6"... .75
Sept. 19.  By 4 Brackets for Show Case
            ret'd at 60c................. 2.40

                                          1.65
            To McGilvery Ac't...........12.72

                                11.07
            By check date 1-18-07........ 7.07

                Balance due............. $4.00

"Important do not destroy."

It will be observed that this latter statement also includes the statement of account made on December 7th, and included a charge of plaintiff company against McGilvery personally. It will also be observed that neither one of

these accounts in any way mention or call attention to the
fact that there was still a balance due upon the old account
of the plaintiff against the defendants of $757.80 for the
fixtures purchased for the store prior to September 5, 1906,
the date when the defendants transmitted to plaintiff a
check for $356.71, which with the Allen account paid in
full the defendants' account to that date.  It appears fur-
ther from the evidence that Mr. Allen, the president of the
plaintiff company, after the fixtures sued for were furnished
to the defendants and put in place in the defendants' store,
was in the store when a conversation took place between him
and Mr. McGilvery, in which Mr. McGilvery told Mr. Allen
that he was glad to turn the business over to the plaintiff
on the old account, and Allen said he was very glad the
account was cleaned up,—that is, the Allen account.  It
appears that in November or December, 1906, Allen went
east and that no objection had been made at that time to
the statement accompanying the check transmitted to plain-
tiff on September 5, 1906, and no objection made to apply-
ing the Allen account upon the indebtedness due the plain-
tiff from defendants.  McGilvery testified that he made an
assignment of the Allen account to the plaintiff company
and delivered it to C. F. Allen and that it has never been
returned to the defendants.

There is a controversy as to whether this assignment of
the account against Allen was made to the plaintiff com-
pany for the purpose of holding the same against Allen
and applying the same as an offset upon the indebtedness
of the defendants, or whether the assignment was made to
the plaintiff company for the purpose of authorizing the
plaintiff company to collect the same from the Lewiston
Navigation Company, the owner of the boat to furnish which
Allen had purchased the goods which resulted in the in-
debtedness claimed by the defendants against Allen.  The
evidence, however, is in conflict upon this question.  There
is much other detailed evidence in the record, which is very
voluminous, directed to the proposition of the defendants'
making an assignment of the Allen account to the plaintiff,

but we have quoted sufficient, we think, to fully illustrate the contention made by the appellant upon this appeal; that is, did or could the appellant accept the Allen account as part payment for the goods sold defendants? Mr. Hollister, secretary of the company, testified that he did not have any notice that the defendants claimed an offset against the account sued upon in favor of C. F. Allen for $757.80, and that he did not know of any assignment of said account; that he had a conversation with McGilvery with reference to the account in February, 1907, when an itemized statement of the account was taken to McGilvery, at which time McGilvery stated that it was his understanding that Mr. Allen had offset that with the boat bill. ''I asked him if Mr. Allen had positively done that, and he said that was his understanding, and if there was any misunderstanding between him and Mr. Allen I would like very much to have it cleared up. He told me he would write to Mr. Allen, and that is the last I ever heard of it." Mr. McGilvery also testified that the first he ever heard of any objections on the part of the plaintiff company to the allowance of the Allen account was in February, 1907, when Hollister brought a statement of the account to him. There is much more evidence directed to particular details, but we think we have quoted sufficient above to show the main contention of the plaintiff as to the insufficiency of the evidence.

The jury were the sole judges of the credibility of the evidence and the weight to be given to the testimony of the several witnesses. They heard the evidence in this case and have concluded that the Allen account was taken by the plaintiff as an offset against the indebtedness due from defendants to plaintiff, and by applying the same as a credit upon said account, the same has been fully paid. Before this court would be warranted in reversing this case for the insufficiency of evidence, it must appear that there is no substantial evidence to support the verdict. If the statement of Mr. McGilvery be true, that he awarded the contract to the plaintiff for a greater sum than another bidder had submitted in order to have the account of Allen taken up,

and the plaintiff furnished the goods upon such contract at a greater price than the defendants would have been compelled to pay elsewhere, then the plaintiff is not in a position in this case to insist that the Allen account was not accepted as part payment, unless Mr. Prugger, who carried on the negotiations with McGilvery and made the arrangement, had no authority to bind the plaintiff corporation by such agreement, and such contract was not ratified or accepted by the company after the same was so made. This is one of the contentions made by appellant in this case; that even conceding that an agreement was entered into by McGilvery and Prugger by which the Allen account was to be accepted as part payment for the amount due plaintiff, still, Prugger had no authority to make such contract or bind the plaintiff. It is in this in which appellant claims the evidence is insufficient. In this connection we will consider an instruction given by the court, bearing upon this feature of the controversy and excepted to by appellant:

"The following instruction is asked by the defendants, and is given to you as the law. The court instructs you that if you believe from the evidence at the time the defendant agreed to purchase the fixtures and other merchandise which the plaintiff sues for in this case, it was agreed between the plaintiff and the defendant that the plaintiff would take and apply as part payment of the purchase price of said fixtures an account which the defendants had against C. F. Allen, and that the defendants had an account against said C. F. Allen for merchandise and interest thereon, according to the agreement with him in the sum of $757.80, and that the defendants paid the plaintiff company the balance due them, over and above the amount of that account, the jury should return a verdict in favor of the defendants."

The court also instructed the jury as follows:

"Some evidence has been introduced with reference to a check for $356.71 sent by the defendants to the plaintiff and which was accompanied by a statement of the account, which statement showed that defendants had charged the plaintiff with the amount of the account claimed to be owing

defendants by C. F. Allen, and that the $356.71 was the amount remaining due to plaintiff. I instruct you that if you find that such check was so sent plaintiff by defendant, and which was accompanied by such statement of account, and if you find that plaintiff received said matter and used said check, and made no objection to the defendants about the condition of said Allen account on the amount due from defendants and charging plaintiff with said Allen account for several months afterward, then said fact should be considered by you as evidence tending to show that an agreement had been made to so credit the same, but it is not conclusive, and you should consider such fact along with all of the other evidence bearing upon the question, and from the whole of the evidence and every fact and circumstance shown by the evidence determine whether such an agreement was made with reference to said Allen account at the time the defendant contracted with plaintiff for the purchase of the merchandise sued for by the plaintiff in this action.''

The objection urged to the first instruction is that it recognizes as legal and binding upon the plaintiff company a contract made, by which the plaintiff would ''take and apply as part payment of the purchase price of said fixtures an account which the defendants had against C. F. Allen,'' and thereby become responsible and agree to pay the debt of another, and that the board of directors and officers of the plaintiff company had no authority and power to make such alleged agreement as it would be against the interest of the stockholders.

The objection to the latter instruction is, that it does not correctly state the law of estoppel. The court, however, in giving such instruction was not dealing with the question of estoppel, but was advising the jury that the acts of the parties, with reference to the account stated and inclosure therewith, should be taken and considered by the jury and given such weight as they might determine, as tending to show that an agreement was made to credit the Allen account. To sustain the contention made by appellant

numerous cases are cited which in effect hold that acts done by agents or officers of a corporation in excess of their power are unlawful, and void. In line with these authorities appellant argues that neither Mr. Prugger, the vice-president, or Mr. Allen, the president, or Mr. Hollister, the secretary, had power or authority to accept, in part payment for goods sold to the defendants, an account the defendants had against the president of the plaintiff company or any other person, and that if it were agreed by Prugger that the account of Allen would be accepted, still such agreement was in excess of his authority as an officer of the corporation and could not bind the corporation in any way whatever. Neither could such void contract be ratified by any subsequent acts, silence or acquiescence of the corporation which in effect would estop it from denying its liability upon such contract. This contention of appellant is clearly illustrated by the decision of the supreme court of Iowa, in *Lucas v. White Line Trans. Co.*, 70 Iowa, 541, 59 Am. Rep. 449, 30 N. W. 771, as follows:

"Where a third party makes with the officers of a corporation an illegal contract beyond the powers of the corporation, as shown by its charter, such third party cannot recover, because he acts with knowledge that the officers have exceeded their power, and between him and the corporation or its stockholders no amount of ratification by those authorized to make the contract will make it valid."

There the president and the manager of the corporation had no authority from the board of directors to enter into a contract of guaranty in behalf of the corporation, and in the absence of such authority he could not bind the corporation *beyond the scope of the business in which the corporation was engaged.*

This decision of the Iowa court clearly illustrates the contention made by the appellant in this case, but this rule does not apply to the facts of the case under consideration. In the case at bar the Valley Lumber Company was engaged in the making and manufacturing of certain store fixtures. The defendants invited bids. The plaintiff submitted a bid

which was largely in excess of a bid submitted by another bidder. Thereupon it appears that negotiations were entered into by which it was proposed by the defendants that the contract would be awarded to the plaintiff, notwithstanding its bid was in excess of the other bidder, provided the plaintiff would accept as part payment therefor an indebtedness due from the president of the plaintiff company to these defendants. The manager and acting president of the company, Mr. Prugger, had authority to sell the manufactured goods of plaintiff in the regular course of trade and receive payment therefor. It does not appear that any limitations were placed upon his power as acting president and manager, or that it was necessary for him to secure authority from the board of directors every time he made a sale of the stock in trade of the plaintiff company. It does not appear that the by-laws of the plaintiff company, in any particular, limited his power as general manager. In the absence of a limitation fixed by the by-laws, this court will not presume that the acting president and business manager of a corporation, dealing in manufactured articles, does not have authority to dispose of the same in the ordinary course of trade. It would be an unusual course to require the passing of resolutions by the board of directors authorizing each separate sale made by the business manager of such corporation. We do not believe that the law exacts the same. But conceding that the business manager had authority to sell the plaintiff's products, the query arises: Did he have authority to accept in payment a debt due from an officer of the plaintiff corporation to the defendants? The power to sell necessarily implies the power to contract for payment. The power to make a contract of sale implies the power to determine the sufficiency and character of payment. If Mr. Prugger, as vice-president and general manager, had authority and power to sell the plaintiff's products in the ordinary course of trade, he had authority to accept payment therefor and had authority to determine the nature and character of such payment. It would be a novel proposition, indeed, to say that while a business manager of a corpora-

tion might have power to make sales of the corporation's products, yet he would have no power to accept in payment therefor anything other than cash.   Transactions of corporations are not always conducted upon a cash basis; exchanges are frequently made; other goods are taken in payment, or partial payment, for goods sold.   It is a common occurrence, as everyone familiar with commercial transactions will readily verify, that accounts are adjusted between corporations and private individuals, and the accounts of the officers of such corporations taken and accepted as offsets and in payment of balances due, and in settlement of accounts between corporations and individuals.   Such methods are common transactions in every-day commercial business, and unless there is some statute which prohibits or fixes the character or manner of payment required by a corporation for its commodity, when sold, or some provision in the by-laws or articles of incorporation of the company, we are not advised of any illegality in accepting in exchange or as payment, accounts, or any other character or specie of indebtedness, which is satisfactory to the business and directing agency of the corporation acting in such matter.   The contract made was not a contract in excess of the power of the corporation to make.   The contract was in line with the general power and duty of the general manager of the plaintiff corporation.   Such contract would not have been void, if made by the corporation itself, upon a proper resolution passed by its board of directors.   If not then void, it is not void when made by the manager of the corporation in line of his duty and power as salesman of the manufactured commodity of the plaintiff corporation.   The distinction between the case now under consideration and the position taken by the authorities which counsel for appellant cites, is this: In the case at bar the officer making the contract acted within the scope of his general authority as such officer, and the contract made was in line with the usual course of business of such corporation and a contract the corporation could make.   In other words, it had reference to the sale of the corporation's goods in the ordinary course of business and

the acceptance of payment therefor, while the cases cited by counsel for appellant, as a rule, relate to contracts made with reference to matters outside and beyond the ordinary business of the corporation, and made by an officer beyond and outside of the limitations of his authority, express or implied. But counsel for appellant argues that the contract was void because it placed the plaintiff corporation in a position of agreeing to pay or discharge the indebtedness of another, to wit, the indebtedness of Allen. There is nothing in this contention. The corporation made no such contract. Its manager made no such contract. The company through its manager, in order to make sale of its goods, agreed to accept as part payment an indebtedness due from one of its officers to the defendants. The adjustment of that indebtedness between the officer and the company was a matter entirely for the company, which it had authority to deal with as the facts and circumstances would arise, in any method not prohibited by law or its constitution and by-laws.

Mr. Thompson discusses the powers of a president of a corporation when acting as general manager very fully in Thompson on Corporations, vol. 4, sec. 4627, and says:

"It is plain from what has just preceded that where the president of a corporation acts as the *general manager* of its business, either by express appointment from the board of directors or by their tacit consent, larger powers may be ascribed to him, even under the theory by which his powers are most limited, on the principle that he is thereby *held out* by the directors as possessing the ordinary powers incident to the office or agency of general manager, with which they have clothed him. If he has been so held out and has been permitted in that character to make contracts for the corporation, it will not be allowed to escape its liability upon a contract so made by him, on the ground that the same was made without its knowledge or concurrence. But the same conclusion is equally supportable on the theory of a direct delegation of authority; for by appointing him to the office of general superintendent or manager, the directors necessarily invest him with the powers incident to that office or agency."

In the case of *Jones v. Stoddart,* 8 Ida. 210, 67 Pac. 650, this court held, "that the president of a business corporation has the implied power to transfer its negotiable paper so as to enable a purchaser to take the same, when properly indorsed, freed of any equities or infirmities of which he had no notice," and in that case the court said: "But the record in the case discloses that respondent did not rely alone upon the legal presumptions which accompany such an indorsement as is found upon the note in question, but introduced evidence to show that it was with the knowledge and by the authority of the company and its board of directors. While no formal entry of a resolution authorizing the transfer appears in the record, yet it does appear that the company had full knowledge of the indorsement, and that it was actually authorized by the board of directors, and that the same was for the benefit of the company, which received the consideration therefor."

So, in the case at bar the record shows that Allen, Prugger and Hollister constituted the entire board of directors of the plaintiff corporation at the time the transaction was had between plaintiff and defendants, and that each and all of these directors and officers knew of the transaction between plaintiff and defendants, that is, knew that the plaintiff sold the defendants certain goods; knew that the defendants claimed that an indebtedness, existing from Allen to these defendants, was to be set off against the purchase price of said goods. The plaintiff furnished the goods sold and accepted payment by the defendants upon the indebtedness to plaintiff, under a claim that the same was the balance due plaintiff after deducting the indebtedness of Allen. In this case, therefore, we are not only of the opinion that Mr. Prugger, as general manager, had the authority to make a contract with the defendants by which the defendants purchased certain goods of the plaintiff, upon condition that the plaintiff would accept as a setoff against such indebtedness an account due the defendants from the president of the plaintiff company, but that the plaintiff, its officers, and board of directors, knew of the transaction and knew that

defendants claimed the Allen account was to be offset against defendants' indebtedness to plaintiff and accepted payment, and is not now in a position to deny the authority of Prugger to make such ·contract.

"The same principle prevents a corporation from repudiating the acts of its officers within the general scope of their powers, in the absence of fraud on the part of the person seeking to charge the corporation, or of collusion between him or his privies, and the officers of the corporation making the contract. When, therefore, the plaintiff at the request of the president and superintendent of a corporation, for the purpose of saving it from a threatened lawsuit, paid several of its notes, it was held that the corporation could not be heard to deny the authority of its president to make the request, it being within the apparent scope of his authority as its superintendent and general agent, and that the original consideration of the notes could not be inquired into." (4 Thompson on Corporations, sec. 5251.)

While upon the evidence of Prugger and McGilvery alone there might be a question as to whether there was an agreement made by which the plaintiff agreed to accept the Allen account as part payment for the goods sold by plaintiff to defendants, yet the transactions that passed between the parties with reference to such indebtedness thereafter would seem to corroborate the claim of the defendants in this case, that there was such an agreement and understanding between the parties. The transmission of the check on September 5th, for $356.71, was accompanied with a statement showing the status of the account between the parties and that such check was for the exact balance after deducting the Allen account from the amount due. plaintiff from defendants. Appellant, however, contends that the sending of said check and the statement of account was not notice of the original alleged agreement, but merely an offer on the part of the defendants or an assumption of their right to apply the Allen account as an offset. We do not so understand the language of the account or the effect that flows from the acceptance by the plaintiff of the remittance made

in connection with the transmission of said account. Look-
ing to the letter of September 5th, we find the defendants
saying to the plaintiff: "We inclose herewith check in pay-
ment of your invoices as mentioned below," showing the
amount of such invoices to be $1,114.51. The account of
Allen, $757.80, with the check $356.71 made such payment
as stated in such letter. This was notice to the plaintiff
company that the defendants claimed that the remittance of
$356.71 paid the invoices mentioned in such letter. The only
method by which such remittance could pay such invoices
would be by also allowing and deducting the Allen account
therefrom. The fact that the letter of transmission fur-
ther states, "The above is per arrangement with Mr. Allen,"
does not affect the notice to the plaintiff that the defend-
ants claimed that they were entitled to charge the Allen
account against the plaintiff's account. The plaintiff could
not accept the remittance surrounded by the conditions of
this statement without the knowledge that such remittance
was made upon the conditions contained in said statement,
and by receiving and accepting the same the plaintiff knew
that the defendants made such claim and took no steps what-
ever to advise the defendants that such claim was incorrect
or could not be allowed by plaintiff, but, on the contrary,
accepted said check and made collection thereof. When this
letter was received by the company, Mr. Allen, the presi-
dent, Mr. Prugger, the vice-president, and Mr. Hollister,
the secretary, were all there and must have known of the
contents of this communication, and must have had full
knowledge of the claim made by the defendants, which was
nothing more than the agreement claimed to have been made
between McGilvery and Prugger; that the Allen account
should be offset against the plaintiff's claim against these
defendants. These were all proper facts and circumstances
to be submitted to the jury, and by them considered in de-
termining what the original agreement between the parties
was.

We think the evidence fully sustains the verdict of the
jury. This discussion also answers the objection of counsel

for the appellant to the giving of the instruction complained of with reference to offsetting the account of Allen against the indebtedness of the defendants, and also the alleged error in refusing to give certain instructions tendered by counsel for the appellants, as to the power and authority of the officers and agents of the plaintiff company and the requiring that the contract made should have been acted upon by the board of directors with reference to such contract, and the instruction as to the law of estoppel as applied to the acts of the plaintiff in receiving and applying the check transmitted in the letter of September 5th. We find no error in giving or refusing instructions.

The appellant assigns as error the overruling of the plaintiff's demurrer to the defendants' affirmative defense set forth in their answer. It is claimed that the affirmative defense was insufficient, for the reason that it plead an alleged agreement by which the agent for the plaintiff attempted to bind the plaintiff to answer for the debt of another, and because such defense contained no allegation taking the agreement out of the provisions of subd. 2, sec. 6009, Rev. Stat. The facts contained in the affirmative answer, to which this demurrer was addressed, do not bring this case within the provisions of the statute. The affirmative defense did not plead facts which constituted an agreement to answer for the debt of another. There was no effort to plead in the affirmative defense a state of facts which showed that the plaintiff was attempting to answer for the debt of another or in any way become responsible therefor. For this reason it was unnecessary to allege that an agreement was made by the plaintiff in writing. The plaintiff also moved to strike out certain portions of the defendants' answer. This motion was overruled and the action of the trial court is assigned as error. In appellant's brief no argument is made in support of this alleged error and from an examination of the question we find no error. The allegations, to which the motion was addressed, relate to a history of the transactions between plaintiff and defendants and the change made in the firm of McGilvery and Givens and their succes-

sors.  These allegations were all proper as showing the facts upon which defendants claimed that there had been an agreement between plaintiff and defendants and a remittance made to plaintiff, accompanying said account in payment of the balance as shown by such account, which it was alleged the plaintiff accepted and retained.  The subject matter of a plea is not sham, irrelevant or redundant because it states the facts more in detail than necessary under the statute, which requires a concise statement of the facts constituting the cause of action or defense.  Some parts of the matter attempted to be stricken out may have been redundant and irrelevant, but not the whole of it, and inasmuch as the motion to strike covers matter which is relevant as well as matter redundant and irrelevant, without separating the one from the other, it is not error to overrule said motion. (*Hurgren v. Union Mutual Life Ins. Co.*, 141 Cal. 585, 75 Pac. 168.)  The appellant also assigns as error the refusal of the trial court to permit certain questions to be answered propounded to witnesses and the overruling of objections to other questions propounded.  We have carefully examined each of these alleged errors and do not find that the court committed any error in such rulings.

As to the question of interest, the court correctly instructed the jury that "when there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of seven cents on the hundred by the year on.  (Subd. 7.)   Money due upon open accounts after three months from the date of the last item."  (Rev. Stat., sec. 1263, amended by Laws of 1897, p. 95.)   Whether or not the item of interest on the Allen account was correct, as stated in the account which the plaintiff agreed should be offset against the defendants' account, is not presented to this court by the record in such a way that we are able to consider or determine if the interest was correct or otherwise.

We have given a very careful examination to this case and have entered into a fuller discussion perhaps than was necessary in view of the provisions of the statute with reference to the effect of a verdict of the jury.  From this ex-

amination we are satisfied that the judgment of the lower court is correct and that there is no reversible error in the record. The judgment will be *affirmed.* Costs awarded to the respondents.

Ailshie, C. J., and Sullivan, J., concur.

### ON REHEARING.

(April 20, 1909.)

SULLIVAN, C. J.—A rehearing was granted in this case, and it is contended by counsel for the petitioner that the court erred, as a matter of law, in holding that "The vice-president of a corporation, acting as president and general manager of a corporation, has authority to sell the stock in trade of a corporation in the ordinary course of business of such corporation, and to receive and accept in payment therefor cash or accounts against any other person," and in holding that "Where there is no limitation upon the power of a vice-president of a corporation, acting as president and general manager, in the by-laws or articles of incorporation of said company, the court will presume that such officer has authority to dispose of the articles manufactured by said corporation in the ordinary course of trade, and accept in payment therefor cash or an account against an officer of said corporation held by the purchaser."

The above quotations are from the syllabus of the original decision in this case, and as abstract propositions of law, state the rule of law correctly, where there is no limitation upon the power of a general manager of a manufacturing corporation to sell and dispose of its manufactured articles. Such manager may accept in part payment therefor claims against an officer of the corporation or accounts against other persons. Of course, this rule proceeds upon the theory that such claims are accepted in good faith, and that there is no collusion or fraud perpetrated by either of the parties to such transaction.

The former decision of this court was based entirely upon
the facts of this case. The judgment appealed from was
based upon the verdict of the jury. The appellant brought
this action to recover from the defendants the sum of $757.80
alleged to be due on open account. The answer denied the
indebtedness and averred under a contract that the corpora-
tion·had accepted in part payment of said account a claim
against the president of the corporation for $757.80. The
facts in regard to said transaction are quite fully stated in
the original opinion in this case.

It appears that the defendants desired to purchase some
furniture and fixtures for their establishment in the city of
Lewiston, and that they had been negotiating for the same
with the Troy Lumber Co. and perhaps with other parties,
and also with the plaintiff corporation. The Troy Lumber
Co. had offered to furnish them for about $220 less than the
plaintiff corporation had offered to furnish the same. It
appears that the Troy Lumber Co.'s offer had been given,
or stated, to the vice-president and general manager of the
appellant and some negotiations occurred between the par-
ties in regard thereto. It also appears that the defendants
had a claim against the president of the corporation for
$757.80, and a contract was entered into by and between the
vice-president and general manager of said corporation for
the corporation and the defendants, whereby the contract
was let to the plaintiff corporation in consideration that it
would receive as part payment on said contract said claim
against the president of the corporation. After said furni-
ture and fixtures had been delivered, and on September 5,
1906, the defendants rendered a statement of account be-
tween the parties showing that they owed the appellant cor-
poration $1,114.51 less the C. F. Allen account of $757.80,
which in said written statement was deducted from the
amount due, leaving a balance of $356.71 due the appellant
corporation, and in said statement was inclosed the check
of defendants for said balance. That statement was received
by the appellant corporation without objection and the check
for $356.71 collected by them. Thereafter the appellant

corporation rendered an account to the defendants on December 7, 1906, showing a balance due said corporation from defendants of $1.65, and again on January 19, 1907, said corporation mailed another statement of account to the defendants showing a balance due of $4.00, which accounts were paid by the defendants.

It appears from the record that said Allen was president of said corporation; that a Mr. Prugger, who made the contract above referred to on behalf of appellant, was vice-president and general manager, and that a Mr. Hollister was secretary of said corporation, and all of said parties were directors thereof. It appears that the said Allen account was assigned to the appellant corporation and that such assignment was never returned to the defendants. About January 1, 1907, Allen disposed of everything he had, both in Idaho and Washington, and moved to New York City. During that month, the respondents took an inventory of their stock and fixtures and were unable to find the invoice of said furniture and fixtures purchased under said contract. Thereupon one of the respondents requested Vice-President Prugger to give him a copy of the same, and he suggested that the respondent call upon Mr. Hollister, the secretary of the said corporation, as he had charge of the books. Upon furnishing said statement, it seems that Hollister then for the first time demanded that the respondents pay said sum of $757.80.

It thus appears that the appellant had not demanded the payment of said sum from the 5th of September, the time that the statement inclosing said check for $356.71 was sent them by the respondents, until about the 1st of February following, after respondents had asked for a copy of the invoice of said furniture and fixtures and after the president of said corporation had resigned and sold all of his stock in said corporation and other property that he owned in Idaho and Washington and left the state.

Upon that state of facts, this court is asked to hold that the vice-president and general manager of said corporation had no authority to enter into a contract for the sale of the

manufactured goods of said corporation, and take in part payment therefor a claim against the president of the corporation. The facts show that the respondents entered into said contract with the appellant and agreed to pay them about $200 more for said furniture and fixtures than any other manufacturing establishment had offered to furnish them, on the sole condition that the corporation would accept in part payment therefor said claim against its president. The corporation seeks to hold on to the benefits and the higher price it was to receive for said fixtures, and repudiate that part of the contract requiring them to accept said claim against its president.

As before stated, the president, vice-president and general manager and the secretary, who were all members of the board of directors of the corporation, had full knowledge of this transaction. That being true, there were two courses open to it to pursue; it could either ratify the contract or repudiate it. The record shows that appellant did ratify it by remaining silent about the matter for several months after it had full knowledge of all the facts. It was then too late to repudiate it. Appellant seeks now to ratify the contract so far as it favors them and repudiate it so far as it does not accord with its interests. This appellant will not be permitted to do. Honesty and fair dealing require the corporation to stand by the contract as made by its vice-president and general manager, or repudiate it *in toto.*

In *Wisconsin Lumber Co. v. Greene & Western Tel. Co.,* 127 Ia. 350, 109 Am. St. 387, 101 N. W. 742, 69 L. R. A. 968, the court had under consideration a contract somewhat similar to the one under consideration here. The corporation sought to ratify the contract in so far as it was beneficial to it, and repudiate it in so far as it imposed any liability on its part. The court said:

"The corporation cannot accept and ratify the contracts in so far as they are beneficial to it, and repudiate them in so far as they imposed any liability on its part. It accepted plaintiffs' money on the strength of these contracts and cannot, while retaining the same, be heard to say that its offi-

cers had no authority to make the contracts under which it was received. This is hornbook law."

See, also, *Nichols & Sheppard Co. v. Hackney,* 78 Minn. 461, 81 N. W. 322.

No objection was raised to said contract between September 5th and the following February by the appellant corporation, and by this long acquiescence it has ratified said contract. During that time Allen had resigned as president of the corporation, and also of the First National Bank of Clarkston, and had disposed of all of his property in Idaho. After all this had occurred the appellant evidently determined to turn the account against Allen back to defendants and thus compel the defendants to go to New York or elsewhere and collect said account from Allen. To permit it to do so now would uphold it in perpetrating a fraud upon the defendants and that this court will not do.

The judgment of the district court must therefore be affirmed as directed in the original opinion in this case.

Stewart, J., concurs.

AILSHIE, J., Concurring.—I concur specially in affirming the judgment of the trial court on the ground that the conduct of appellant amounts to an implied ratification of the acts of the vice-president and managing agent of the corporation.