[Civ. No. 2819.  First Appellate District, Division One.—May 13, 1919.]

ROBERT L. COLEMAN, etc., et al., Appellants, v. SPRING CONSTRUCTION COMPANY (a Corporation), et al., Respondents.

[1] STREET LAW—IMPROVEMENT ACT OF 1911—APPLICABLE TO ALL MUNICIPALITIES—NOTICE.—The Improvement Act of 1911 is expressly made applicable to all municipalities in the state, and, where a newspaper is not printed or circulated in the city, notice by posting in lieu of publication is provided.

[2] ID.—POSTING OF NOTICE—CONSTRUCTION OF ACT.—As the Improvement Act of 1911 does not in any single section permit the publication of any of the proceedings in a newspaper merely circulated or distributed in the city and not published therein, it is only in a city where no newspaper is published as well as circulated that notice by posting alone can be given.

[3] ID.—NOTICE OF PRELIMINARY RESOLUTION—TIME.—All that the statute requires the city council to do, in so far as the giving of notice of the preliminary resolution is concerned, is to publish twice, or to post and keep posted for the same length of time as publication should be had, a copy of its resolution of intention. As under any circumstances the greatest period of publication is eight days, in municipalities where a newspaper is not published and circulated, the demands of the statute are satisfied if the notices are posted and kept posted for a like period.

[4] ID.—DUE PROCESS—OPPORTUNITY TO MAKE PROTESTS—POWER OF LEGISLATURE TO LIMIT TIME—JURISDICTION OF CITY COUNCIL.—The guaranty of due process of law only requires that the lot owners be given notice of the intended improvement, and that they be accorded an opportunity to protest and to have their protests

heard. It is within the power of the legislature to determine what notice is sufficient for this purpose, and the city council, having given the prescribed notice, acquires jurisdiction for all purposes on the expiration of the time fixed by the statute. Where more time is given than is prescribed by the statute, but, notwithstanding this, no protests are filed during the time given, or at any time thereafter, the court cannot be required to nullify the proceedings resulting therefrom.

[5] ID.—RETURN OF WARRANT.—Where the warrant, after demand for payment is made, is returned to the superintendent of streets within thirty days after its date, this constitutes a sufficient return under section 25 of the act.

[6] ID.—VOID BONDS—CLOUD ON TITLE—EQUITY.—A bond, if void on its face because of failure to contain the recitals required by the act, is void in the hands of an innocent purchaser for value as well as in the hands of the contractor, and does not constitute an enforceable obligation against the lot owner, and hence casts no cloud upon his title. If there be no cloud, there is no ground for equitable relief.

[7] ID.—REMOVAL OF CLOUD—DUTY OF LOT OWNER.—Under the amending act of 1915 the lot owner may remove an asserted cloud upon his title by paying the obligation, and this he should offer to do before he seeks equitable relief.

[8] ID.—NOTICE OF IMPROVEMENT—HEIGHT OF LETTERS—SUBSTANTIAL COMPLIANCE WITH ACT.—While the act requires that the heading, "Notice of Improvement," shall be "in letters not less than one inch in length," if the words "notice of" are in letters of one inch in length and the word "improvement" in letters of only five-eighths of an inch in length, there is a sufficiently substantial compliance with the requirement of the statute to warrant the court in sustaining the proceedings after the issuance of the bond, in view of the conclusive evidence provision of section 66 of the act. (Opinion of supreme court on denying hearing.)

APPEAL from a judgment of the Superior Court of Marin County. Edgar T. Zook, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edgar M. Wilson, Powell & Dow and Francis Dunn for Appellants.

Elston, Clark & Nichols and Earl D. White for Respondents.

NOURSE, J., *pro tem.*—This is an appeal from a judgment in favor of defendants in an action to quiet title to

certain lots in the city of Larkspur. Plaintiffs attack the validity of certain street improvement proceedings which resulted in the levy of an assessment and the issuance of bonds thereunder creating a first lien upon the property involved. They asked for judgment declaring the assessment void, canceling the bonds, and quieting their title. At the close of the trial the action was dismissed as to all defendants except the Spring Construction Company, which performed the street work, the city of Larkspur and its treasurer, all of whom are the respondents on this appeal.

The facts are that on April 7, 1915, the city council of Larkspur adopted its resolution of intention for the purpose of improving Baltimore Avenue under the "Improvement Act of 1911" (Stats. 1911, p. 730). There being no newspaper published and circulated in the city of Larkspur, copies of this resolution were posted in three public places and kept so posted for a period of fourteen days. Eighteen days after the expiration of the fourteen days of posting the city council adopted its resolution ordering the work to be done. On April 16th the superintendent of streets posted notices of the intended improvement along the line of the contemplated work. Thereafter and on May 12th sealed proposals were solicited in due time and order, a contract was executed with the Spring Construction Company, the work done, inspected, and accepted.

The assessment was levied January 16, 1916, to cover the amounts due, a warrant was attached to the assessment demanding various sums and advising the owners that nine year serial bonds would be issued for assessments remaining unpaid. This warrant was filed and recorded and thereafter delivered to the contractor. The assessment was read upon the property, demand was made, and the warrant was returned unsatisfied to the superintendent of streets within thirty days after its date with the return indorsed thereon. On March 1, 1916, after the expiration of the full thirty days from the date of said warrant and the recordation of the return thereof, bonds were issued by the city treasurer covering the assessments unpaid.

No complaint, objection, protest, or appeal was ever made or filed by the owners in writing or otherwise at any stage of the proceedings.

Appellants advance five points of attack upon the validity of the proceedings and the bonds issued by the city council. These will be treated in the order presented.

1. Appellants insist that the Improvement Act is not applicable to Larkspur because no paper is published and circulated in that city. The argument is that as section 6 of the act gives to the property owners fifteen days after the second publication of the copy of the resolution of intention within which to file their protests, and that where this notice is given by posting instead of publication in a newspaper there is no time fixed for the beginning of this period, the city council cannot acquire jurisdiction of any of the proceedings leading to the improvement of streets under this act if the preliminary notice is not given by publication in a newspaper.

[1] But the act is expressly made applicable to all municipalities in the state (section 1), and notice by posting in lieu of publication is provided for where no newspaper is printed or circulated in the city (section 79). The latter section also provides that "no publication, or notice, other than that provided for in this act, shall be necessary to give validity to any of the proceedings." The word "notice" above quoted refers to posting, and the clear purpose of the section is to substitute posting for printing in a newspaper in cities where no newspaper is published or circulated.

[2] In this connection appellants urge that as section 79 permits posting in cities only where no newspaper is "printed *or* circulated," if any newspaper of any character is distributed in the city posting cannot be had. The entire proceedings following the adoption of the resolution of intention are based upon the publication of a copy of the resolution in a newspaper "published *and* circulated" in said city. The same language is used throughout the act where the character of publication is specified. Therefore, when by section 79 of the act posting is permitted in lieu of publication, this method of giving notice is only available as a substitute for the character of publication required by the act. As the act does not in any single section permit the publication of any of the proceedings in a newspaper merely circulated or distributed in the city and not published therein, manifestly it is only in a city where no

newspaper is published as well as circulated that notice by posting alone can be given.

2. The second proposition is based upon the theory that the city council did not acquire jurisdiction to proceed because the running of the period within which protests could be filed was not fixed. As to this, appellants rely upon the provisions of sections 6 and 7 of the act, which read in part as follows:

(Section 6.) "At any time within fifteen days after the date of the second publication of the resolution of intention, . . . any owner of property liable to be assessed . . . may make written protest against the proposed work."

(Section 7.) "When no protests have been delivered to the clerk . . . within fifteen days after the date of the second publication of the resolution of intention . . . the city council shall be deemed to have acquired jurisdiction to order the proposed improvements."

In a city where a newspaper is published and circulated a copy of this resolution must be published twice. This may be in a daily, semi-weekly, or a weekly newspaper. The publications may thus appear two, four, or eight days apart, according to the kind of newspaper designated by the city council for the purpose. Protests may be filed within fifteen days after the second or last publication. This time may, therefore, be sixteen, nineteen, or twenty-three days after the first publication. The time within which protest may be filed is thus fixed by the statute in an indefinite way, depending upon the periods of publication, and no notice of the time or place within which such protests may be filed was required to be given by the city council.

[3] All that the statute required the city council to do in so far as the giving of notice of the preliminary resolution is concerned was, at the time these proceedings were had, to publish twice, or to post and to keep posted for the same length of time as publication should be had, a copy of its resolution of intention. As under any circumstances the greatest period of publication would be eight days, the demands of the statute are satisfied if the notices are posted and kept posted for a like period. There is thus no more uncertainty as to the time within which protests may be filed where the notice is given by posting than where it is

given by publication in a newspaper. Here the posting was made on April 10th, and the notices were kept posted for fourteen days thereafter, and the work was not ordered done until May 12th, a period of thirty-two days thereafter. Thus the lot owners were given more time within which to make protest than they would have had under the most favorable conditions if notice had been given by publication.

[4] All that the guaranty of due process of law requires in this respect is that the lot owners be given notice of the intended improvement, and that they be accorded an opportunity to protest and to have their protests heard. This notice they have had, and it goes without question that notice of the intended improvement is as effectual for this purpose when given by posting as when given by publication. Appellants quote from numerous authorities holding that defects in notices of the time and place for hearing protests defeat the jurisdiction of the council to proceed. These authorities are not applicable here because the council was not charged to give this notice, but the statute itself gave to the lot owners the only notice required as to the time and place for hearing such protests. It is within the power of the legislature to determine what notice is sufficient for this purpose, and having done so the city council acquires jurisdiction for all purposes on the expiration of the time fixed by the statute if notice of the resolution of intention has been given in the manner prescribed. This having been done, it is incumbent upon the lot owners to determine for themselves the limit of time within which their protests may be filed. And where, as in this case, more time was given for this purpose than is required by the statute, but, notwithstanding this, no protests were filed during the time given or at any time thereafter, the court cannot be asked to nullify the proceedings resulting therefrom.

3. The third objection is equally without merit. The complaint is that the word "improvement" in the notices of improvement which were posted along the line of the contemplated work was printed in type five-eighths of an inch in height instead of one inch, as required by the act. Aside from the fact that this objection is extremely technical, the lot owners were given an opportunity to appeal to

the city council under section 26 of the act, the posting of these notices being an act required of the superintendent of streets. No appeal was taken, and in view of the provisions of that section the determination of the city council as to the sufficiency of these proceedings is conclusive and forecloses any objection on this score at this time. But the notice as posted was legible and substantially complied with the requirements of the act. (*Clark* v. *Los Angeles,* 160 Cal. 30, 43, [116 Pac. 722] ; *McCaleb* v. *Dreyfus,* 156 Cal. 204, 210, [103 Pac. 924].)

[5]   4. The fourth objection is that the warrant was never returned as required by the act. The facts are that the warrant was recorded and thereafter handed back to the contractor. After demand for payment was made the warrant was returned to the superintendent of streets, and this was done within thirty days after its date. This is all that the act requires (section 25).

[6]   5. The fifth ground for relief urged by appellants is that each bond is void on its face because it does not contain the recital that it may be redeemed by the owner at any time before maturity, as required by the amendment to section 63 of the act as enacted June 11, 1915, effective August 10, 1915, (Stats. 1915, p. 1464). It is conceded that none of these bonds contained this recital, and that all were issued subsequent to the effective date of the amendment.

Of course, if it be true that each bond is void upon its face, then it is void in the hands of an innocent purchaser for value as well as in the hands of the contractor. In such event they do not constitute enforceable obligations against the lot owner, and hence cast no cloud upon his title. If there be no cloud, then there is no ground for equitable relief. (*Bucknall* v. *Story,* 36 Cal. 67, 71; *Chase* v. *Treasurer,* 122 Cal. 540, 542, [55 Pac. 414]. See, also, *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102].)

[7]   But in another respect appellants have mistaken their remedy. The amending act of 1915 above noted also changed the provisions of section 60 of the act by giving to the lot owner, or to any person interested therein, the privilege of paying off such bond and discharging the land from the lien ''at any time before commencement of proceedings for sale.'' Thus, if, as appellants insist, the form of the

bonds as to payment before *maturity* is to be controlled by the amendment, the privilege of making payment before *sale* of the land is also available. He may thus remove an asserted cloud upon his title by paying the obligation, and this he should offer to do before he seeks equitable relief.

In answer to this attack of appellants, respondents urge that as the contract was executed under the original act, the contractor is entitled to a bond in the form prescribed by the act at the time of the execution of the contract. The argument is that as the form of the bond and the terms of payment were fixed in the original act, these provisions became a part of the contract, and the subsequent amendment impaired the obligation of the contract. There is much force in this argument, but the question is one which should be determined only in a proceeding where it is properly put in issue.

In conclusion, it should be said that the complaint in this action is wholly lacking in the essential averments of a bill in equity of this nature. There is no allegation that appellants did not have actual notice of every step in the proceedings leading to the improvement of their property. The proceedings were instituted on April 7, 1915. This action was commenced on December 12, 1916, some twenty months thereafter. If an owner sits quietly by while his property is being improved in this manner, and makes no objection or protest at any stage of the proceedings, having full knowledge of what is being done in the meantime, he cannot wait until he has received all the benefits of the improvement, and it is too late for the authorities to correct the alleged irregularities, before suing in a court of equity to remove the cloud placed upon his property through his own acquiescence.

For the reasons given the judgment is affirmed.

Waste, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 10, 1919, and the following opinion then rendered thereon:

In denying the application for a hearing in this court after decision by the district court of appeal for the

first appellate district, division one, we withhold our approval from that portion of the opinion dealing with the objection that the notice of improvement posted was fatally defective in that the heading, "Notice of Improvement," was not printed in letters of sufficient length, except that portion which holds that there was a substantial compliance with the requirements of the statute. [8] The statute requires "said notice shall be headed 'Notice of Improvement,' in letters not less than one inch in length." The notice was headed, "Notice of Improvement," the words "notice of" being in letters of one inch in length and the word "improvement" in letters of only five-eighths of an inch in length. Of course, there was in this a technical departure from the requirement of the statute, but we think, taking the whole heading together, that it should now be held that there was a sufficiently substantial compliance with the requirement of the statute to warrant us in sustaining the proceeding after the issuance of the bond, in view of the conclusive evidence provision of section 66 of the act. (Stats. 1911, p. 760.)

We disapprove the concluding paragraph of the opinion, the paragraph commencing with the words, "In conclusion it should be said," etc.

Application for a hearing is denied.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.