[Civ. No. 2880.  First Appellate District, Division Two.—August 14, 1919.]

FRED BECK et al., Respondents, v. RANSOME–CRUMMEY CO. (a Corporation), et al., Appellants.

[1] STREET LAW—FAILURE TO ACQUIRE JURISDICTION—CONSTITUTIONAL GUARANTY OF DUE PROCESS—ASSERTION OF EQUITIES BY CONTRACTOR.—When a street assessment is attacked on the ground that the local board failed to acquire original jurisdiction, the owner may rest on the constitutional guaranty that his property may not be taken without due process of law. If jurisdiction is lacking, no equities asserted by the contractor can prevail.

[2] ID.—INVALIDITY APPARENT ON FACE—APPEAL TO COUNCIL NOT NECESSARY.—If the invalidity of the initial resolution of intention is apparent on its face, the owner is not required to seek its correction by appeal to the council. He may stand upon his rights whenever an attempt is made to assert any claim based on an assessment void on its face.

[3] ID.—DEFINITION OF DUE PROCESS OF LAW.—While it is impossible to define with precision "due process of law," it is the exact equivalent of the law of the land as used in the Magna Carta, and, broadly speaking, it means that before a man's life or liberty or property may be taken by the state, he must be given notice of the proceedings which may terminate in the taking, and be given an opportunity to be heard in his own defense. It means further that the notice shall be a real and reasonable one, and the hearing, such as ordinarily or at least reasonably, is given in similar cases.

1. Validity of special assessment as affected by unlawful invasion of property rights, note, L. R. A. 1915D, 772.

3. Definition of due process of law, note, 122 Am. St. Rep. 904.

[4] ID.—SUFFICIENCY OF COMPLIANCE WITH STATUTE.—The law of the land does not necessarily mean simply statutory law, for no state can make everything due process of law, which by its own legislation it declares to be such. On the other hand, if the statute requires as the initial step in the process of depriving a man of his property the performance of a specifically defined act, unless the act be performed substantially, no jurisdiction—power—exists for further action in that proceeding against him.

[5] ID.—IMPROVEMENTS UNDER VROOMAN ACT — NOTICE TO PROPERTY OWNERS.—In proceedings under the Vrooman Act there is no provision for personal service. Notice, as distinguished from knowledge, is the essential thing and is implied from publication. It must be the notice required by the statute, not some other publication, and it must be substantially the same in all similar cases.

[6] ID.—BURDEN OF PROOF.—In the matter of jurisdiction with respect to proceedings under the Vrooman Act the individual is not required to show that he has not had knowledge, but the burden is on the state and those claiming under it adversely to the individual to show that he has had notice.

[7] ID.—CONTENTS OF RESOLUTION OF INTENTION—PROVISIONS OF STATUTE MANDATORY.—The requirements of the Vrooman Act that when the council, under the circumstances therein prescribed, desires to make the expense of the improvement chargeable upon a district, the resolution of intention shall "describe the said district and refer to a plat or map approved by the city council, which shall indicate by a boundary line the extent of the territory to be included in said assessment district, which plat or map shall be on file in the office of the city engineer, before said superintendent of streets shall proceed with the publication and posting of notices of street work," are mandatory and jurisdictional.

[8] ID.—OMISSION OF STATUTORY REQUIREMENT — SUBSTANTIAL COMPLIANCE—QUESTION FOR COURT.—Where a clear statutory requirement is omitted from the initial resolution or process which is the means of imparting notice of adverse proceedings, the rule of liberal construction must yield to the constitutional guaranty of due process of law; but if there is not an entire omission of a statutory requirement, but merely a defect, a court may properly determine there has or has not been a substantial compliance dependent upon the facts of the particular case.

[9] ID.—DETERMINATION OF TRIAL COURT CONTROLLING.—The judgment of what is a substantial compliance with the statute is to be exercised in the first instance by the trial court, and if the case is

---

5. Land owner's right to notice and hearing of assessment for public improvements, note, 28 L. R. A. (N. S.) 1201.

one where a requirement of the statute has not been entirely disregarded, its determination of the question of substantial compliance ought to be controlling in the absence of an abuse of discretion.

[10] ID.—SCOPE OF SECTION 5½ OF VROOMAN ACT—JURISDICTIONAL REQUIREMENTS NOT WAIVED.—The provision of section 5½ of the Vrooman Act that all objections to any act or proceeding prior to the date of the notice of award not made in writing within ten days from the date of the first publication of notice of award of contract shall be deemed to have been waived does not refer to matters which directly affect the jurisdiction of the council to order the work, such matters being by the last clause of said section expressly excepted from its provisions.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. M. F. Soto for Appellants.

Louis Oneal and Ralph C. McComish for Respondents.

BRITTAIN, J.—Fred Beck, with thirty-one other property owners of San Jose, obtained a judgment against the Ransome-Crummey Co. and the city treasurer of that city quieting the title to their respective lands as against any claim of lien, and enjoining the issuance of bonds, based upon work done by the Ransome-Crummey Co., under proceedings taken by the city council, for paving and otherwise improving North Thirteenth Street in San Jose from Santa Clara Street to the northerly limits of the city. The defendants appeal. The city treasurer has no personal interest in the controversy.

The appellants do not make any clear and direct attack upon the judgment, except that the suit being one in equity, the judgment should be reversed on the authority of *Coleman v. Spring Construction Co.,* 41 Cal. App. 201, [182 Pac. 473]. The portion of that decision to which reference is made was to the effect that a property owner may not permit public work to be done and thereafter attack the validity of the jurisdictional proceedings leading to the assessment. The statement was unnecessary to the decision of the case, which involved the question of original jurisdiction. Further hearing was

denied by the supreme court, with an expression of its disapproval of the statement.  (*Coleman* v. *Spring Construction Co.,* 41 Cal. App. 208, [182 Pac. 473].)

[1]  When an assessment is attacked on the ground that the local board failed to acquire original jurisdiction, the owner may rest on the constitutional guaranty that his property may not be taken without due process of law.  If jurisdiction is lacking, no equities asserted by the contractor can prevail.  (*Schwiesau* v. *Mahon,* 110 Cal. 543, [42 Pac. 1065]; *Heft* v. *Payne,* 97 Cal. 108, [31 Pac. 844].)  [2]  If the invalidity of the initial resolution of intention is apparent on its face, the owner is not required to seek its correction by appeal to the council.  He may stand upon his rights whenever an attempt is made to assert any claim based on an assessment void on its face.  (*City Security Co.* v. *Harvey,* 176 Cal. 682, [169 Pac. 380].)  In this case the respondents maintain the resolution of intention was void because it provided for a district assessment and made no reference to a map of the district required to be on file when the resolution was adopted.  On each side of this question the usual argument, supported by the usual citation of multitudinous authorities from this and other states, is made.

This court recently had occasion to analyze the able opinion written by Mr. Justice Shaw of the supreme court in the leading case of *Chase* v. *Trout,* 146 Cal. 362, [80 Pac. 81].  Hearing was granted by the supreme court and is now pending in the case in which this analysis was made.  (*Watkinson* v. *Vaughn,* 182 Cal. 55, [186 Pac. 753].)  Reference to the opinion of this court in *Watkinson* v. *Vaughn* is not, therefore, in present reliance upon it as an authority, but to avoid incorporating in this opinion a further analysis of *Chase* v. *Trout.*

Doubt existing in the minds of public officials and attorneys regarding the application of well-established rules of law has placed upon the property owners of the state and upon those engaged in the business of making public improvements a heavy burden of expense, annoyance, and delay through the litigation which is instituted either by property owners or the contractors in regard to practically every important public improvement.  In every such suit the property owner relies on the constitutional guaranty

of due process of law. In many, probably in most, of the cases the question of constitutional guaranty has no proper place. In the clear and learned opinion in *Chase* v. *Trout* the principles governing the rule of due process of law in public improvement cases were discussed. Notwithstanding the fact that the decision in that case was rendered in 1905, and has probably been cited in every public improvement case arising in California since that date, the clear statement of the meaning of the constitutional guaranty of due process of law, as applied to such cases, seems to have been misapprehended.

[3] It is as impossible to define with precision "due process of law" as it is exactly to define "fraud" or "police power." As applied to different classes of cases, courts, by process of inclusion and exclusion, apply the principles involved in the phrase. The supreme court of the United States has said that without the constitutional guaranty the right of private property could not be said to exist in the sense in which it is known to our laws. (*Ochoa* v. *Hernandez y Morales,* 230 U. S. 139, [57 L. Ed. 1427, 33 Sup. Ct. Rep. 1033, see, also, Rose's U. S. Notes].) The guaranty is always and everywhere present to protect the citizen against arbitrary interference with his rights. (*Ulman* v. *Baltimore,* 72 Md. 587, [11 L. R. A. 224, 20 Atl. 141, 21 Atl. 709].) Due process of law is the exact equivalent of the law of the land as used in the Magna Carta. (*Murray* v. *Hoboken L. & I. Co.,* 18 How. 272, [15 L. Ed. 372, see, also, Rose's U. S. Notes].) Broadly speaking, it means that before a man's life or liberty or property may be taken by the state, he must be given notice of the proceedings which may terminate in the taking, and be given an opportunity to be heard in his own defense. It means further that the notice shall be a real and reasonable one, and the hearing, such as ordinarily, or at least reasonably, is given in similar cases. (*Simon* v. *Craft,* 182 U. S. 427, [45 L. Ed. 1165, 21 Sup. Ct. Rep. 836]; *Lent* v. *Tillsen,* 140 U. S. 316, [35 L. Ed. 419, 11 Sup. Ct. Rep. 825]; *Turpin* v. *Lemon,* 187 U. S. 51, [47 L. Ed. 70, 23 Sup. Ct. Rep. 20]; *Galpin* v. *Page,* 18 Wall. 350, [21 L. Ed. 959, see, also, Rose's U. S. Notes].) [4] The law of the land does not necessarily mean simply statutory law, for no state can make everything due process of law, which by its own legislation it

declares to be such. (*Burdick* v. *People*, 149 Ill. 600, [41 Am. St. Rep. 329, 24 L. R. A. 152, 36 N. E. 948].) On the other hand, if the statute requires as the initial step in the process of depriving a man of his .property the performance of a specifically defined act, unless that act be performed substantially no jurisdiction—power—exists for further action in that proceeding against him.

The analogy between the ordinary suit at law and proceedings for the levy of special assessments for public improvements is not exact, but the same broad principles of common right and common sense control the application of the law of the land to the question of jurisdiction in both instances. Legislative acts regarding special assessments for public improvements are to be liberally construed. So, too, are the provisions of the Code of Civil Procedure. (Code Civ. Proc., sec. 4.) Such acts usually prescribe with more or less particularity what the resolution of intention shall contain. The Code of Civil Procedure prescribes what shall be stated in the summons in a civil suit. (Code Civ. Proc., sec. 407.) If any statement expressly required by the statute to be made in the summons is entirely omitted, its service does not give the court jurisdiction to proceed against the defendant, because in legal effect he has received no notice at all of the proceeding. The law of the land in such a case has not been obeyed and the defendant may rely upon the constitutional guaranty. The fact that a former statute may have required fewer or more or different facts to be stated does not change the rule. The requirements of the statute in force at the time the summons is issued must be substantially obeyed, or its service does not constitute the notice essential to due process of law. A defective summons, which does not meet the requirement of substantial compliance with the statute, may be amended, but in that case notice is not complete and jurisdiction to proceed does not exist until after service of such a summons as the law requires. Because service of an unlawful or void summons is ineffectual to give the defendant notice, he is under no obligation to call its defects to the attention either of the court or the plaintiff. He may safely proceed with his own business as if no suit were pending. If in such a case the court should proceed to judgment, regardless of any change in the defendant's

position or of any expenditure or loss sustained by the plaintiff, the defendant's property could not be taken on execution nor would the plaintiff be heard upon a claim that the defendant should have waived the protection of the constitution. In cases where constructive service is permitted, the substantial requirements of the statute regarding the matters to be stated in the published notice also must be fulfilled. These rules of law relating to the matter of obtaining jurisdiction in a civil action are too familiar to every judge and practicing attorney to require citation of authority. Each essential requirement has its counterpart in the matter of initiating proceedings for charging private property with the cost of local improvements.

[5] In proceedings under the Vrooman Act, [Stats. 1885, p. 147] there is no provision for personal service. Notice is implied from publication. The notice is the essential thing as distinguished from knowledge. It must be the notice required by the statute, not some other publication. It must be substantially the same in all similar cases. Otherwise, it would depend upon the personal views of different judges in successive suits, perhaps upon the same assessment, whether or not the original power existed to order the work done. Uniformity in the administration of justice is a substantial right. (*Ransome-Crummey Co.* v. *Bennett,* 177 Cal. 565, [171 Pac. 304].) [6] The burden is on the state and those claiming under it adversely to the individual to show that he has had notice. In the matter of jurisdiction the individual is not required to show that he has not had knowledge. If the contractor in such cases signs a contract in disregard of the law requiring a particular kind of notice to be given, when he has expended his money he is in no worse position than if he disregarded the law concerning limitations of actions and neglected to bring suit on a promissory note within the statutory period. Statutes of limitations are upheld and enforced regardless of personal hardship because public policy requires it. Similarly that broader public policy which protects the individual against encroachment of the state without sanction of law requires that legislative enactments prescribing that certain things must be done to authorize the state to invade private rights must be enforced.

[7] In the present case the common council of San Jose undertook to order the work done under the sanction of the

Vrooman Act, which, among other things, provides that under certain circumstances the council may make the expense of a contemplated public improvement chargeable upon a district. The resolution of intention in such a case is required to "describe the said district and refer to a plat or map approved by the city council, which shall indicate by a boundary line the extent of the territory to be included in said assessment district, which plat or map shall be on file in the office of the city engineer before said superintendent of streets shall proceed with the publication and posting of the notices of street work, and shall govern for all details as to the extent of the said assessment district." (Stats. 1913, p. 406.)

The resolution of intention in question on this appeal is incorporated in the findings by a reference to a copy appended to the defendants' answer. It describes the work to be done, declares that in the opinion of the mayor and council the work is of more than ordinary public benefit, and that the costs and expenses are made chargeable to an assessment district which was declared to be the district benefited and which is described with reasonable certainty. It contains no reference to any plat or map approved by the city council, and there is no suggestion in the appellants' brief that such a map as was required by the statute to be on file at the time the resolution was passed was in fact on file. The requirement of the statute is as positive in regard to the reference to the map as that of section 407 of the Code of Civil Procedure that the summons must contain a notice that unless the defendant appears the plaintiff will take judgment or apply to the court for other relief demanded in the complaint. These requirements are mandatory and jurisdictional in the one case as in the other. (Cooley's Constitutional Limitations, 7th ed., p. 747; 1 Cooley on Taxation, 3d ed., p. 639; 2 Cooley on Taxation, 3d ed., p. 1241; Brown on Jurisdiction, 2d. ed., secs. 51, 169a.)

[8] Where a clear statutory requirement is omitted from the initial resolution or process which is the means of imparting notice of adverse proceedings, the rule of liberal construction must yield to the constitutional guaranty of due process of law. Courts cannot in a particular case dispense with any element of notice which the legislature has enacted shall be given in all similar cases. If, either in the summons

or in the resolution, there is not an entire omission of a statutory requirement, but merely a defect, a court may properly determine there has or has not been a substantial compliance with the statute dependent upon the facts of the particular case. This necessarily calls for the exercise of that faculty which Mr. Chief Justice White of the supreme court of the United States, in discussing the meaning of the word "reasonable" in the Sherman Act, designated as "practical common sense." (*Standard Oil Case*, 221 U. S. 1, [Ann. Cas. 1912D, 735, 34 L. R. A. (N. S.) 834, 55 L. Ed. 619, 34 Sup. Ct. Rep. 502, see, also, Rose's U. S. Notes].)

[9] This judgment of what is a substantial compliance with the statute is to be exercised in the first instance by the trial court. If the case is one where a requirement of the statute has not been entirely disregarded, its determination of the question of substantial compliance ought to be controlling in the absence of an abuse of discretion. In the present case the resolution shows the absence of any reference to the map or plat required by the statute.

[10] On behalf of the appellants it is argued that under section 5½ of the Vrooman Act all objections to any act or proceeding prior to the date of notice of award not made in writing within ten days from the date of the first publication of notice of award of contract shall be deemed to have been waived. By the last clause of section 5½ matters directly affecting the jurisdiction of the council to order the work are excepted expressly from its provisions.

It is next argued that since the Vrooman Act did not originally require that a map or plat should either be on file or referred to in the resolution, the requirement contained in the act under which these proceedings are taken was not a constitutional prerequisite. Reference is made to a number of cases with a lengthy quotation from the opinion in *Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 660, [161 Pac. 113].

In that case the court construed certain curative provisions of the Bridgford Act. (Stats. 1897, p. 254.) The legal effect of this and similar decisions is that if constitutional prerequisites are met, the rule of due process of law has not been violated. This is simply another way of saying that the rule of due process of law requires reasonable notice of hearing and an opportunity to be heard. It does not determine

what reasonable notice is, and no decision of any court of the United States has been cited which holds that anything less than substantial compliance with what the legislature has determined shall constitute notice meets the constitutional prerequisite. After jurisdiction attaches different principles come into play, and the constitutional guaranty of "due process of law" is rarely involved. This phase of the general subject is discussed in the opinion of *Hutchinson Co.* v. *Coughlin, ante,* p. 664, [184 Pac. 435].

The judgment appealed from might be sustained upon other grounds relied upon by respondents, but the lack of jurisdiction to order the work done, which is so plainly apparent by reason of the disregard of the requirement of the Vrooman Act, renders discussion of other questions presented by the briefs improper until their determination becomes necessary in connection with a case where such determination will have controlling force.

The judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 9, 1919.

All the Justices concurred, except Olney, J., who was absent.