[S. F. No. 13341. In Bank.—October 31, 1930.]

SAMUEL WALLACE RICE et Ux., Appellants, v. HANRAHAN COMPANY (a Corporation) et al., Respondents.

Kirkbride & Gordon and Kirkbride, Wilson & Brooks for Appellants.

Albert Mansfield and D. T. Jenkins for Respondents.

PRESTON, J.—This cause involves the validity of certain street improvement proceedings in Los Gatos, had under the Improvement Act of 1911 (Stats. 1911, p. 730) and the Improvement Bond Act of 1915 (Stats. 1915, p. 1441). The only serious point urged on the appeal is that a certain small area included in the improvement was private property. There is, however, no proper record upon which to found this contention.

Appellants recite a portion of an opinion of the Railroad Commission rendered some four months after judgment in the case before us and upon this showing alone assert the invalidity of the whole street proceedings. The learned District Court of Appeal treated the point as properly before them and disposed of it contrary to appellants' contention. We are entirely satisfied with the opinion and

conclusion of said court and hereby adopt same as the opinion of this court herein, as follows, to wit:

"This is an action to enjoin performance of street work at Los Gatos, pursuant to a contract made on May 4, 1928, with the defendant Hanrahan Company under the Improvement Act of 1911, supplemented by the Improvement Bond Act of 1915. The trial court gave judgment in favor of defendants, and from that judgment appeal was taken by plaintiffs, who are the owners of property within the district assessable for the work. Plaintiffs contend that the proceedings leading up to the award of the contract were insufficient to confer jurisdiction upon the town council to proceed with the improvement.

"Among the streets designated for improvement in the resolution of intention and in the notices preceding the award were Royce street, Gray's lane and Elm street, Gray's lane lying between the other two streets; and all three running from University avenue on the east to Santa Cruz avenue on the west. The three streets are crossed by tracks of the Southern Pacific Company; and after the contract had been awarded, the town applied to the railroad commission for an order authorizing the widening and improvement of the crossings at the intersection of these streets and the railroad tracks. The commission gave the desired permission for improvement of the crossing at Elm street, but denied the application as to the other two crossings, upon the ground that the volume of traffic at those points did not justify expenditure by the railroad company to the extent involved in the installation of an improved type of crossing.

"In such work the railroad company bears the expense of the improvements within lines set two feet outside of the outermost rails; and both the resolution of intention and the notices described the proposed improvement so as to exclude from the public contract awarded to the Hanrahan Company the crossing work within the lines drawn as just stated. It appears, however, that at Gray's lane some widening of the street will be necessary, and that in addition to the land already dedicated for street purposes the city will need to acquire and has included in the portion of Gray's lane, as described in the contract, a strip 5.7 feet wide by 27.6 feet long, said to belong to the railroad company.

"It is contended that the inclusion of this strip in the public contract renders the contract void, and it is further contended that certain alleged defects in the legal notices and certain alleged shortcomings in the specifications were serious enough to deprive the town council of jurisdiction to charge upon property owners the expense of the proposed improvements.

"So far as the undedicated strip of land is concerned, it is quite possible that the town may acquire the necessary rights thereto either by dedication or otherwise before any assessment is imposed. And under section 26 of the act of 1911, as amended in 1923 (Stats. 1923, p. 117), though work is done on a street or right of way not lawfully dedicated or acquired at the time, the proceedings are not to be held invalid, provided the land is lawfully dedicated or acquired at any time before judgment is entered in the suit involving such proceeding. If because of failure to acquire the necessary rights, plaintiffs' property shall be subjected to an invalid assessment, plaintiffs will have their legal remedy under section 21 and the general rules of law applicable under such circumstances. The inclusion of the undedicated strip does not result, therefore, in denying to plaintiffs due process of law. (*Chase* v. *Trout,* 146 Cal. 350, 359 [80 Pac. 81] ; *Watkinson* v. *Vaughn,* 182 Cal. 55, 58 [186 Pac. 753] ; *Noyes* v. *Chambers,* 202 Cal. 542, 544 [261 Pac. 1006].)

"It appears further that the plaintiffs did not deem this objection to be of sufficient merit to receive specific mention in the notice which they filed with the council under section 16 of the act, protesting against the award of the contract. In that notice plaintiffs contented themselves with the general objection that the council never acquired jurisdiction of the subject matter of the proceeding.

"Plaintiffs rely upon *Spaulding* v. *Wesson,* 115 Cal. 441 [47 Pac. 249], and *Hall* v. *Fairchild Co.,* 66 Cal. App. 615 [227 Pac. 649]. The former, having been decided long before the amendment of 1923, is not now applicable to the situation found here, and in the Hall case the area in question formed part of a public park which could not legally be withdrawn for highway purposes. Accordingly, the assessment in that case was beyond cure.

"We are of the opinion that the legal rights of plaintiffs are fully protected under the provisions of the act as it read at the time of the proceedings in question.

"Another objection made relates to the heading of the posted 'Notice of Improvement'. The law requires such heading to be in letters of not less than one inch in length. Some of the letters fell slightly below this standard, but the trial court found that the letters were of sufficient height and size so that the words 'Notice of Improvement' could be easily read by a person of average eyesight, at a distance of 45 feet (about the width of a street), and that there was a substantial compliance with the legal requirement in that particular. All the letters in this case were larger than those in *Coleman* v. *Spring Construction Co.*, 41 Cal. App. 201 [182 Pac. 473], where the notice, being found sufficiently legible, was held to be in substantial compliance with the law. So, also, in *McCaleb* v. *Dreyfus*, 156 Cal. 204, 210 [103 Pac. 924], stress is laid on legibility rather than on literal compliance with the statute. In view of the finding of the trial court, we conclude therefore that the proceedings were not invalidated by the slight departure from the statutory requirement as to the lettering. (*Beck* v. *Ransome Crummey Co.*, 42 Cal. App. 674, 682 [184 Pac. 431].)

"It is urged further that the notice of improvement was defective because of failure to state that the work was to be chargeable upon a district and to describe the district. Section 5 of the act makes no such requirement. It directs that there shall be a brief statement of the work proposed, with reference to the resolution of intention for further particulars. The resolution gives a detailed description of the district to be benefited and made subject to assessment. The notice with its reference to the resolution thus afforded the necessary information.

"An additional objection to the award of the contract is based on the ground that the specifications are defective because of indefiniteness in requirements concerning materials and also because of unlawful discretion conferred upon the contractor. The specifications for concrete pavements call for 1 part of Portland cement, 2 parts of sand, and 4 parts of broken rock or stone by measure, with the proviso that the proportions may be changed by the con-

tractor whenever the voids in the materials used are not filled by use of the ingredients in the specified proportions. But it is also stated that a cubic yard of concrete in place shall contain not less than 6 sacks of cement. And the specifications contain likewise detailed provisions concerning the kind, quality and condition of the sand and stone, and the sizes of the meshes through which those materials must be screened to assure general uniformity.

"It thus appears that the contractor is required to furnish materials definitely described and to mix them ordinarily in the fixed proportions with a view to having a serviceable pavement with all voids filled. It was recognized, however, that occasionally, in order to fill all voids, it might be necessary to vary somewhat the proportions of sand and rock so as to procure the right density and make a durable pavement. The contractor has no discretion to depart from the specifications determining the condition and quality of the materials, and since the purpose is to assure, through intelligent exercise of discretion, an admixture making a pavement free of the voids which are apt to occur in any such work because of occasional variation in uniformity of one or another of the ingredients, there is not that vice in the specifications which the law condemns. It is, of course, desirable to have all details precisely fixed so far as reasonably possible, but allowance must be made in practice for contingencies bound to arise in every piece of actual construction. Some modicum of discretion must therefore in sound reason be conceded, and though a measure of practical judgment is exercised by the contractor, the property owners are safeguarded by the requirement of fulfillment of the contract under the direction, and to the satisfaction, of the city engineer. There is nothing to indicate that the discretion authorized will have any bearing on the cost of the work proposed or any appreciable effect upon the assessments. Public contracts, as well as private contracts, must be dealt with in a practical way. They are intended to get beneficial results, and while the property owners' rights must be protected by due legal procedure and such definiteness and certainty in plans and specifications as will guard against jerry-building and dishonesty, the tendency to strain at gnats is to be deprecated. The discretion authorized in this instance is reasonable, and is justified by the views expressed in *Mill Valley* v. *Massachusetts Bonding Co.*, 68 Cal.

App. 372, 380 [229 Pac. 891]; *Chase* v. *Trout,* 146 Cal. 350, 364 [80 Pac. 81]; *Haughawout* v. *Hubbard,* 131 Cal. 675, 679 [63 Pac. 1078]; *Thoits* v. *Byxbee,* 34 Cal. App. 226, 234 [167 Pac. 166]; *Burnham* v. *Abrahamson,* 21 Cal. App. 248, 258, 259 [131 Pac. 338]; *Burns* v. *Casey,* 13 Cal. App. 154, 168 [101 Pac. 94].

■ "Defectiveness in the specifications is charged also because of a clause, in relation to the cement for use in concrete pavements, declaring that the contractor, if requested by the engineer, shall furnish tests of cement made by some reliable chemist, such tests to conform to specifications required by the American Association of Civil Engineers. This, however, is not the only provision concerning such cement. Immediately preceding the clause criticised appears the following: 'All cement shall be Portland cement. It shall be delivered in original unbroken barrels or bags, with the name and brand of the manufacturer plainly marked. It must be perfectly dry and free from lumps, and when stored must be protected from the weather and moisture of the ground.' Portland cement is a standard commodity, and the products of the different manufacturers are known to builders and engineers. There is nothing in the language used making it mandatory upon the engineer to demand tests, but as a matter of precaution the contractor is obligated to furnish tests if called for. In relation to cement for use in the construction of sidewalks and curbs, the provision is that 'The cement used must be Portland Cement meeting the requirements and tests of the Standard specifications for Portland Cement adopted by the American Society of Testing Materials.' There is nothing in the record to indicate that the specifications of the organizations mentioned are not commonly accepted as trustworthy standards, and there is no good reason why general trade usages should not enter into public contracts as well as private. If the engineer may satisfy himself by tests 'made by some reliable chemist', and those tests are 'to conform to specifications required' in the one case by the American Association of Civil Engineers and in the other by the American Society of Testing Materials, it is fair to conclude that 'reliable chemists' in general, as well as engineers and contractors, are thoroughly familiar with the specifications intended. We find no merit in the objection.

■ "The specifications are assailed further because the type of implements for mixing materials is made subject to the approval of the engineer. There is a provision that materials shall be mixed in a batch mixer or a pug mill mixer approved by the engineer and that if the latter sort is used the paddles shall be of the number and type approved by the engineer. Such matters are mere operative details properly committed to the judgment of the engineer as the supervising officer. (*Thoits* v. *Byxbee,* 34 Cal. App. 226, 234, 235 [167 Pac. 166]; *Burns* v. *Casey,* 13 Cal. App. 154, 158 [109 Pac. 94].) The same may be said concerning the attack upon the provision in relation to the curing of concrete pavements, which on being laid are to be covered with not less than two inches of earth or other material approved by the engineer, and kept wet for at least ten days. The 'other material' does not enter into construction any more than the earth, if used. It is a mere temporary protective device and the substitution may properly be left to the expert judgment of the engineer. (*Mills* v. *City of Elsinore,* 93 Cal. App. 753, 769 [270 Pac. 224].)

■ "Another provision which is said to make for invalidity is that in relation to the concrete pavement, which is required to be 'not less than the thickness shown in the plans, after being thoroughly tamped.' This is a hypercritical objection. The specifications refer repeatedly to the plans on file, and the plans and the specifications are to be read together, the contractor being required to 'keep upon the work a copy of the plans and specifications' available at all times to the engineer.

■ "Under the head of 'General Requirements' the specifications contain a clause stating that 'any work or material which may have been unintentionally omitted in the description of the work, but which is clearly necessary for proper prosecution of the contract, shall be furnished by the Contractor, the same as if it had been specified'. Criticism is leveled not at the purpose or effect of the clause, but at the use of the words 'unintentionally omitted', without designation of an arbiter. The clause is merely included as a general rule of interpretation of the plans and specifications, the clear intent being to declare that all the incidents to the performance of a workmanlike job are to be deemed incorporated, whether expressly mentioned or

not. We apprehend that similar provisions are included in almost every such set of specifications as a precaution against disputes over trivial matters. The provision cannot justly be condemned.

"Though plaintiffs presented to the town council, under section 16 of the act, a protest against proceeding with the improvement, none of the various objections now made to the specifications was included in their protest. Therefore, according to the express provision of the section, the objections were waived, and injunction to restrain the work will not issue upon the grounds not stated in any protest. (*Blake* v. *City of Eureka,* 201 Cal. 643, 648 [258 Pac. 945]; *Brydon* v. *City of Hermosa Beach,* 93 Cal. App. 615, 624 [270 Pac. 255].)

"All preliminary proceedings having been duly had, the council acquired jurisdiction to order the improvement. It thereupon passed a resolution to that effect, ordering at the same time posting and publication of notices inviting sealed bids. It is contended, though not seriously, that these notices were deficient in their indication of the character of the work to be done and the district to be affected. The streets were named and specfic reference was made to the resolution of intention for further particulars and a description of the work. The resolution contained all the information which plaintiffs would have included in the notices, and section 9 of the act expressly makes reference to the resolution sufficient for purposes of description of the improvement and the assessment district. The notices therefore complied with the law.

"Hanrahan Company, having been the lowest bidder, received the award of the contract. Notice of the award was then given, but in the notice one of the streets to be improved—Wilder avenue—was, through inadvertence, not named. The notice of award referred, however, to the bid on file, to the resolution of award and also to the resolution of intention for a description of the work and the particulars thereof. Section 11 of the act makes no specific requirement as to the contents of the notice of award, and since it was not essential that such notice should recite the names of the streets, we are of the opinion that the reference to the resolutions previously adopted and the bid of the successful contractor charged the property owners with

notice of the extent of the work actually included in the contract as awarded.

"This objection was really the only one now made which was specifically embodied in the protest presented by plaintiffs to the council, and reliance is placed upon the decision in *McNutt* v. *Los Angeles,* 187 Cal. 245 [201 Pac. 592], dealing with the concurrent improvement and change of grade of a tunnel and adjacent streets under the act of 1913. Under section 3 of that act, however, it was made the express duty of the city clerk to mail to each property owner in the assessment district a notice of the passage of the resolution of intention 'with the name of the street to be improved and between what streets located'. There being in the act of 1911 no such mandatory direction to name streets in the notice of award, the case cited is inapplicable.

"We have given consideration to the several objections urged by plaintiffs, notwithstanding the fact that these objections, with one exception, had all been waived by failure to present them in the protest to the town council. Our conclusion is that the notices given were in substantial compliance with the law, that the specifications possess legal definiteness and certainty, that the council was invested with jurisdiction to order the work and that the contract therefore was legally awarded and made."

The judgment is affirmed.

Richards, J., Seawell, J., Curtis, J., and Langdon, J., concurred.

SHENK, J., Dissenting.—I dissent. I cannot subscribe to that portion of the main opinion which holds that the city authorities had jurisdiction to institute and carry forward the street assessment proceedings in the face of the admitted fact that the improvement was to be made in part on privately owned property. Since the cases of *Spaulding* v. *Bradley,* 79 Cal. 449 [22 Pac. 47], and *Spaulding* v. *Wesson,* 115 Cal. 441 [47 Pac. 249], the law has been uniform that private property may not be improved under a street assessment proceeding and that a proceeding which attempts to do so is void. Section 26 of the act of 1911 was amended in 1923 (Stats. 1923, p. 117), to provide that no proceedings taken under the act should be held invalid on the

ground that the right of way on which the work is to be done has not been lawfully dedicated or acquired, "provided the same is lawfully dedicated or acquired at any time before judgment is entered in the suit involving such proceeding". The present suit unquestionably is one involving such proceeding. It is conceded on all hands that a portion of the property to be improved is privately owned property and that no dedication thereof for public use took place before the entry of judgment herein. Furthermore, section 21 of the act affords no protection to the plaintiffs if, because of the failure to acquire the necessary right of way, the plaintiffs' property be subjected to an invalid assessment. The question is one of jurisdiction and that section, in my opinion, does not afford protection or relief in such a case.

Waste, C. J., concurred.