[Crim. A. No. 1702. Appellate Department, Superior Court, County of Los Angeles.—January 30, 1941. Opinion on rehearing.]

THE PEOPLE, Respondent, v. SEVER A. JOHNSON, Appellant.

Manuel Ruiz, Jr., for Appellant.

Ray L. Chesebro, City Attorney, W. Jos. McFarland, Assistant City Attorney, and Wm. U. Handy, Deputy City Attorney, for Respondent.

SHAW, P. J.—Defendant was charged in three counts with paying to women employees a wage less than the minimum wage fixed by an order of the Industrial Welfare Commission, was found guilty on all three counts, sentenced and appeals from the judgments. The complaint in each case alleged that he was "an employer of women in an unclassified occupation in the food packing industry". In support of the charges the People introduced in evidence order No. 10A, made by the Industrial Welfare Commission on the 8th day of June, 1923, relating to "unclassified occupations". We hold this order void because it shows on its face that the commission, in making it, disregarded the directions of the legislature by lumping together for consideration and decision a miscellany of unspecified, unsegregated industries whereas its statutory authority required it to hear and determine matters relating to each separate industry separately.

The order just referred to was made under the provisions of an act authorizing the fixing of minimum wages for women and minors employed in industry. (Stats. 1913, p. 632, as amended.) No question is raised as to the validity of this act, and as it is substantially like that involved in *West Coast Hotel Co.* v. *Parrish,* (1936) 300 U. S. 379 [57 Sup. Ct. 578, 81 L. Ed. 703, 108 A. L. R. 1330], it is undoubtedly valid. It has now been substantially embodied in sections 70–73 and 1171–1203 of the Labor Code enacted in 1937 (Stats. 1937, pp. 185–329).

This statute, at the time the order above mentioned was made, provided for an Industrial Welfare Commission, imposed upon it a duty "to ascertain the wages paid, the hours and conditions of labor and employment in the various occupations, trades, and industries in which women and minors are employed in the State of California, and to make investigations into the comfort, health, safety and welfare of such women and minors" (sec. 3 as originally enacted, Stats. 1913, p. 633), and directed that "If, after investigation, the commission is of the opinion that, in any occupation, trade or industry, the wages paid to women and minors are inadequate to supply the cost of proper living, . . . the commission shall call a conference, hereinafter called 'wage board,' composed of an equal number of representatives of employers and employees in the occupation, trade, or industry in question", which board was to investigate the matter and make a report to the commission and whose proceedings and deliberations could be used as evidence in any proceedings before the commission. (Sec. 5, as amended by Stats. 1921, p. 379.) At any hearing held by the commission, employers, employees and interested persons might appear and give testimony. (Sec. 4 as originally enacted, Stats. 1913, p. 633.) The act also provided: "The commission shall have further power after a public hearing had upon its own motion or upon petition, to fix: 1. A minimum wage to be paid to women and minors engaged in any occupation, trade or industry in this state, which shall not be less than a wage adequate to supply to such women and minors the necessary cost of proper living and to maintain the health and welfare of such women and minors." (Sec. 6, as amended by Stats. 1921, p. 379.) It also provided that the commission should give public notice by publication of the time, place and purpose of such hearing, and that after such hearing it might make an order "specifying the minimum wage for women and minors in the occupation in question", and directed the commission to mail "so far as practicable to each employer in the occupation in question" a copy of the order so made. (Sec. 6, as amended in 1921.)

From all these provisions we conclude that by the statute the commission was required to consider and deal with each separate industry separately, and that a blanket order applicable to unspecified, unsegregated industries, linked to-

gether merely for the purpose of the order, was not authorized. The order must specify the minimum wage for *"the occupation in question"*, and notice of it must be sent to each employer in *"the occupation in question"*. Before making such order the commission must give notice of a hearing, the purpose of which hearing would be to fix a minimum wage "in any occupation, trade or industry". The wage board provided for in section 5 must contain representatives "in *the occupation, trade or industry in question";* and without deciding that the appointment of such a board was a necessary prerequisite of an order fixing minimum wages we can see that at least the statute contemplated such board as a possibility in every case. Manifestly these provisions could not be complied with unless there were some particular occupation, etc. "in question", that is, under investigation, in each case. Of course, we do not mean to say that in making orders a separate document must be written for each industry. No doubt, after proper investigation and consideration separately of several industries the commission might write its orders in regard thereto in one document.

We do not intend by what we have just said to draw any hard and fast line setting limits on what might be regarded as a single industry or occupation and dealt with as such by the Industrial Welfare Commission. Undoubtedly that commission had a considerable discretion in that respect, and its acts in treating somewhat differing forms of business activity as in reality allied and constituting a single industry or occupation, or in segregating a general industry into smaller parts for separate consideration, must be upheld so long as a substantial and reasonable basis therefor appears; but it could not, under the law as written, yoke together for consideration industries belonging to entirely different *genera.* To illustrate by cases mentioned in argument, it would not be necessary for the commission, in dealing with the canning of fruit, to hold separate hearings for each kind of fruit that may be canned; but bootblacking and taxi dancing are obviously unrelated occupations, not to be considered conjointly in one hearing by the commission. Yet the two last mentioned are undoubtedly, as the argument suggests, embraced within the terms of the order here in question.

■ We see nothing in our interpretation of the statute which would render it invalid, and hence there is no occasion to

invoke the rule for construing a statute so as to make it valid rather than invalid. It seems to be feared by plaintiff that upon our construction of the statute the commission could make arbitrary discriminations, imposing minimum wage and other regulations on some industries or occupations and omitting them from others, according to the dictates of whim or caprice. This contention does not take into consideration the above-mentioned parts of the statute which laid upon the commission the duty "to ascertain the wages paid . . . in the various occupations, trades and industries in which women and minors are employed", provided that whenever, after investigation, it was of the opinion that in any occupation, trade or industry the wages paid to women and minors were inadequate for the purposes specified, it should appoint a wage board, and empowered it to fix a minimum wage adequate for those purposes. Undoubtedly the purpose of the legislature here was that the wages paid to women and minors in all industries should be adequate to the specified purposes. That result was to be accomplished by means of the Industrial Welfare Commission. If wages paid in any industry already met the standard thus prescribed, nothing was to be or needed to be done about it; if they did not it was the duty of the commission to bring such wages up to standard by a proper order. Here was no arbitrary discretion reposed in the commission; its duty was to see that all wages should meet the statutory requirement. (See *Associated Industries* v. *Industrial Welfare Com.* (1939), 185 Okl. 177 [90 Pac. (2d) 899, 906], where a like construction was put upon a substantially identical statute.)

Order No. 10A, on which this prosecution is based, manifestly is not such an order as is authorized by the statute. By its terms it purports to fix the minimum wage for women and minors "in any unclassified occupation" and defines the term "unclassified occupations" to mean "all employment not classified under the mercantile, manufacturing, millinery, hotel and restaurant, laundry and dry cleaning, fruit and vegetable canning, fruit and vegetable packing, fish canning, and telephone and telegraph industries, office or professional occupations, domestic labor, or the harvesting, curing or drying of any variety of fruit or vegetables, and the cracking and sorting of nuts". No particular industry is here "in question", or is affected by this order. It is plainly intended to be a

catch-all for all sorts of industries not among those described, no matter how diverse in character or location such industries might be, or what different matters might be deserving of consideration in fixing the minimum wage. It is no better in principle than would be an omnibus order covering all industries. The above-mentioned requirements of the statute could not be complied with in connection with such an order, and it must be regarded as beyond the power of the commission.

■ In addition to the defects in Order No. 10A itself, it appears that the notice given of the hearing required before the order could be made was insufficient. Besides a certified copy of the order, the people introduced in evidence certified copies of the affidavits of publication of a notice of hearing. Section 6 of the statute, as amended in 1921, required that notice of such a hearing be given "by advertisement in at least one newspaper published in each of the cities of" (enumerating 12 cities in the state). While the statute did not expressly require this notice to state the purpose of the hearing, it must be construed to have that effect by implication. Section 6 required the commission to mail "a copy of said notice" to any employer filing "a written request for such notice of such hearing and the purpose thereof". This mailing would not satisfy the request unless the purpose were stated in the notice, and such statement would also be necessary to satisfy constitutional requirements discussed in a later part of this opinion. The affidavits mentioned show publication of a notice in newspapers corresponding in number and location to this requirement, but its contents were insufficient. It stated the purpose of the hearing thus: "for the purpose of rescinding, amending or altering Orders [here follows a list of several orders by number, year and industry covered, including] . . . Number 10, amended 1920, Unclassified Occupations". Other parts of the notice indicated that as to each industry listed "minimum wages to be paid to women and minors" would be considered. No further description of "Unclassified Occupations" appeared, but the list of other occupations set forth included many—not all—of those excluded from that category by the definition contained in Order No. 10A and above quoted. This notice, in so far as it related to "unclassified occupations" was too vague and uncertain to support any hearing or order. No attempt was made in the notice, as there was

in the order, to fortify that term by any definition. According to Webster's New International Dictionary, "unclassified" means merely "not classified", and "classified" means "grouped in classes". By these definitions the term "unclassified occupations", standing alone, would have little, if any, significance as a means of giving notice. It leaves unanswered the questions, "by what rule of classification?", "when?" and "by whom?", as well as others. Nor is it helped by its context, whose only possible suggestion would be that the occupations specifically listed in the notice were "classified" and all others were "unclassified". If any reader of the notice conceived that idea he speedily discovered himself in error when he read the order, for at least two occupations listed in the notice were covered by the order as "unclassified" and several occupations *not* listed in the notice could not be regarded as "unclassified" according to the definition found in the order.

██ Without an opportunity for the interested parties to be heard, in a matter of this kind, where the legislature has committed to a special tribunal the fixing of wages, the resulting order would be invalid for want of due process of law. (*Western Union Tel. Co.* v. *Industrial Com.* (1938), 24 Fed. Supp. 370 and cases there cited; *McGrew* v. *Industrial Com.* (1938), 96 Utah, 203 [85 Pac. (2d) 608, 617].) The provision for the hearing and for notice thereof, being a part of the statutory embodiment of due process, must be regarded as mandatory, for, even though some other form of hearing or some different notice might have been regarded as sufficient, the statute has not so declared, and compliance must be had with what has been, not merely what might have been, provided. (See *O. T. Johnson Corp.* v. *City of Los Angeles* (1926), 198 Cal. 308, 316, 317 [245 Pac. 164]; *Beck* v. *Ransome-Crummey Co.* (1919), 42 Cal. App. 674, 679, 681 [184 Pac. 431]; *Overell* v. *Overell* (1937), 18 Cal. App. (2d) 499, 502 [64 Pac. (2d) 483]; *Bandini Estate Co.* v. *County of Los Angeles* (1938), 28 Cal. App. (2d) 224, 229, 230 [82 Pac. (2d) 185].)

The judgments are reversed and the cause is remanded to the municipal court for a new trial.

BISHOP, J., Concurring.—I concur. Order numbered 10A is the only one claimed by the People to govern this case.

That this order was intended to be what the presiding judge
in the majority opinion has characterized it as being, that is,
a "catch-all", appears to me to be plain from the fact that
in its definition of what the commission meant order 10A to
cover it excluded, *seriatim*, eight industries for which special
orders were made in 1923, a ninth industry which had been
covered by an order made in 1920, and four other industries
for which, it is reasonable to assume, the commission intended
at the time it adopted order 10A to make special orders after
proceeding in the manner prescribed by the statute. Delib-
erately, the Industrial Welfare Commission in 1923 followed
the statute in a number of cases, but instead of completing
their task in the manner authorized attempted to discharge
their duty by a blanket order. If this blanket leaves the
women of some industries in the cold it is a condition which
may readily be remedied by the present commission follow-
ing the present statute or by the enactment of a different
statute; it is not to be remedied by our ignoring the require-
ments of the statute.

Schauer, J., dissented.